Wright *v.* The State.

## JAMES WRIGHT *v.* THE STATE.

CRIMINAL LAW. *Disturbing public worship.* Upon the trial of defendant for wilfully disturbing an assemblage of persons met for religious worship, it is not error to charge that if the defendant voluntarily entered into a fight at the church door, and thereby disturbed a worshipping assemblage in the church, he would be guilty.

### FROM SUMNER.

Appeal in error from the Circuit Court of Sumner county. JO C. STARK, J.

WILSON & HEAD for Wright.

ATTORNEY-GENERAL LEA for the State.

Cooper, J., delivered the opinion of the court.

It is made a misdemeanor by statute to wilfully disturb or disquiet any assemblage of persons met for religious worship, by noise, profane discourse, rude or indecent behavior, or any other act, at or near the place of worship: Code, sec. 4853. The plaintiff in error was presented for wilfully disturbing an assemblage of persons met for religious worship at a church named, "by noise, quarrelling, profane discourse, rude behavior, and by swearing and fighting." Having been convicted, he has appealed in error.

The defendant, while on his way to the church on the occasion referred to, driving a buggy, undertook to pass the family wagon of a neighbor, in which there were several persons of both sexes going to the same church, and in doing so struck one of the mules drawing the wagon, thereby causing the team to run to one side of the road, and endangering the vehicle and its occupants. Buck Branham, one of these occupants, became angry, and said to the defendant you must not do that any more. When the defendant reached the church, he did not go in, although the services had commenced, but stood upon the steps at the door until the other party came up. When Buck Branham got upon the steps, defendant told him: "I suppose you say I ran against your mule." Branham replied: "Yes, I did say so, and you did do it." Defendant retorted: "You are a liar," some of the witnesses say with an oath. Branham at once collared the defendant, pushed him back against the church, and struck him, the defendant returning the blow. They

were then separated. In the meantime, the religious services were interrupted, some of the audience running out of the door, and others jumping out of the windows. There is some conflict in the testimony as to the details of the occurrence, but the jury would have been well warranted in finding the facts to be as given.

These facts do show a disturbance of a worshipping assemblage by noise, quarrelling, swearing and fighting, in which the defendant participated, and which was brought on by his voluntary act in remaining at the church door, and commencing the conversation with the other participant. Whether the disturbance was willful on the part of the defendant was a question for the jury, and the evidence is sufficient to sustain their finding.

The trial judge, after reciting the statute, said to the jury: "If you find from the proof, that the defendant did wilfully disturb or disquiet an assemblage of persons met for religious worship by any of the means, or in the manner set forth in the statute, you should so find, otherwise you should acquit him. It is insisted for the defendant that what he did was in defending himself from the violence of Branham. Upon this I charge you that a man has the right to defend himself against violence or threatened violence, even under the very pulpit, and if in so doing he disturbs the public worship, he would not be guilty. If, on the other hand, the defendant voluntarily entered into a fight at the church door, and thereby disturbed the public worship, he would be guilty, and you should so find."

The charge is brief, but it substantially says to the jury, if you find from the proof that the defendant has wilfully disturbed the religious assembly mentioned by noise, profane discourse, rude or indecent behavior, or any other act, he is guilty, unless indeed you find that what he did was merely defending himself from personal violence. The charge to this extent was certainly as favorable as the defendant could have asked. And if the charge erred in brevity, the error was corrected by the first special request of the defendant, which undertook to recite the facts claimed by him to be proved, the court saying to the jury, in effect, that if they found that what defendant did was in self-defense they should acquit him. The jury found as a fact that the defendant did by some act, not in self-defense, wilfully disturb the worshipping assemblage. There is clearly enough, outside of the personal struggle between the parties, to sustain the verdict upon the question of fact and intent. For, the stopping of the defendant at the church door, and addressing his adversary in the first instance, and retorting in the angry, and probably profane language used, were of themselves sufficient to make out the offense, the jury being satisfied of the criminal intent.

Objection is taken to that part of the charge in which the trial judge said that if the defendant voluntarily entered into the fight, and thereby disturbed the public worship, he would be guilty. The argument is that if the defendant voluntarily entered into the fight, it was with the intent of committing an assault and battery, not with the intent of disturbing the wor-

shipping assembly, and that he can only be punished for the first offense. The logic of the argument is that there could only have been one intent in fact, or that the particular intent swallowed up all other intents. "In the affairs of life," says Mr. Bishop, "it is seldom a man does one thing prompted by one motive alone, to accomplish an end." The general rule is, that if a man intends to do what the law forbids, there need be no other evil intent. He is presumed to intend the necessary consequences of his action. If a person attack another at or near a place of worship, the necessary result of which is to disturb the assembly, the law will presume that he had the intent to disturb the assembly, as well as the intent to commit an assault and battery. It would be a case of two intents. The rule in such cases is, that the intent necessary to constitute the offense for which the defendant is being tried, will not be affected by another criminal intent. Thus, if one with the principal purpose of robbing another, attacks him, and, to accomplish the robbery, wounds him with intent to do grievous bodily harm, the latter intent, though secondary to the former, is within the statute on the latter subject. If both intents exist, it is immaterial which was the principal, and which the secondary intent: 1 Bish. Crim. Law, sec. 339. It has, therefore, been decided, in a case in which the very point now contended for was insisted upon, that it was no defense to an indictment for obstructing an officer in the discharge of his duties, that the intent of the defendant was, by an assault and battery, to inflict per-

sonal chastisement on the officer: *United States* v. *Keen,*
5 Mason, 453.

The argument maintains that the State could only,
if the defendant voluntarily entered into the fight, pros-
ecute him for the assault and battery. But the law
is clearly otherwise. Subject to the doctrine of the
merger of crimes which has no application to the class
of cases under consideration, a person may be held
liable for any crime, of whatever nature, which can be
legally carved out of his act. The power of election
rests with the State, not with the criminal. "If the
evidence show him to be guilty of a higher offense
than he stands indicted for, or of a lower, or of one
differing in nature, whether under a statute or at com-
mon law, he cannot be heard to complain; the ques-
tion being, whether it shows him to be guilty of the
one charged:" 1 Bish. Crim. Law, sec. 791.

It is another question, whether a defendant, if he
has been convicted of one offense, can plead the con-
viction in bar of an indictment for another offense.
These are the cases which have been cited in argu-
ment. There has been no former conviction or ac-
quittal here. And if there had been as to the assault
and battery, it is almost certain that it could not have
been relied on as a defense in this case for the reason
given in *Ross* v. *State,* 4 Lea, 442.

There is no error in the judgment, and it must be
affirmed.