STEELE *et al. v.* STATE.

*(Knoxville,* September Term, 1949.)

Opinion filed December 10, 1949.

E. R. BLANKENSHIP, of Knoxville, C. R. McCLAIN, of Knoxville, for plaintiffs in error.

NAT TIPTON, Asst. Atty. Gen., for the State.

426

Mr. Justice Prewitt delivered the opinion of the Court.

The defendants appeal from conviction of rape and punishment fixed at death by electrocution.

This case was before this Court at the September term, 1948, following a conviction for the same offense with the same penalty, and was reversed because of inadmissible evidence introduced in the court below.

At the time of the commission of the offense the defendants were 18 and 19 years of age respectively. They do not seem to have been involved in any criminal proceedings heretofore. The injured female, Mrs. Annie Kennedy, was a woman 58 years of age and a grandmother.

On March 28, 1948, Mrs. Kennedy went to a picture show, accompanied by her five-year-old granddaughter. This show was near her home which seems to have been in a section of Knoxville largely populated by Negroes. The night in question was very bad and rainy. According to Mrs. Kennedy's testimony, as she returned toward her home from the show, she was confronted by some Negro who announced that he wanted to walk home with her. She indignantly repulsed his advances, went a short distance to a street light, stood there five or ten minutes, and then thinking that she could proceed safely, started on her way home.

Mrs. Kennedy testified that when she had proceeded about halfway from this street light to her home she was assaulted by two Negroes—one tall and heavy-set and the other somewhat smaller; that the larger of these Negroes dragged her from the street over into a vacant field near a pig pen; that the smaller Negro held her five-year-old granddaughter while she was criminally assaulted; that after the larger Negro assaulted her against her will with force, he called the other one, who was holding her granddaughter, and the second Negro ravished her. Mrs. Kennedy was unable to distinguish the features of the defendants, but did testify that the two defendants resemble very closely in size her attackers. After the second Negro had accomplished his purpose, both of them ran. Mrs. Kennedy rushed to her home and the police were immediately notified.

As a result of much investigation, a Negro cab driver, Columbus Stevens, and another Negro by the name of James Simpson were questioned by the officers. It seems that Stevens had driven Simpson to a point near the place of the assault and there he saw the defendant Bearden. Simpson was employed by the Southern Railway, and he testified that on the night of the assault he had been driven to this corner near the scene of the assault and there saw the defendants, that he got a match from one of them, that about this time he saw a woman with a little girl going down the street, and that defendant Bearden made a remark to him disclosing his intention to have carnal knowledge of this woman. Simpson further testified that both defendants appeared to have been drinking, and that he asked Bearden if he was not drunk, following this remark about his intention.

As a result of this interview by the police officers with Stevens and Simpson, Bearden was arrested. The record is rather indefinite as to how long Bearden was held in custody before confessing his part in the assault. It does show that Bearden's grandparents, who reared him, were permitted to see him, and he was urged in their presence to tell the truth. Bearden was later confronted by Stevens and made a confession in which he admitted that he and Steele assaulted Mrs. Kennedy. There is no insistence by Bearden that there was any force or duress used upon him.

After Bearden's confession, Steele was brought in by the officers and questioned for a short time with reference to his part in the assault. The officers described his manner as being very composed at first until they read to him Bearden's confession, and that immediately thereafter he became nervous and at an apparent loss to know what to do. They brought Bearden before Steele, and Bearden repeated his confession to Steele, after which he became even more nervous. One of the officers testified that he was slobbering.

Steele was turned over to other officers for the purpose of having him fingerprinted about 2 p. m. on the afternoon of April 6, 1948, and about 5:30 on this same afternoon he made a complete confession of his part in the assault. Steele claimed that after he was carried back to the jail and in this interval between 2 p. m. and 5:30, he was beaten severely with a rubber hose by one of the deputies named Hobbs. Hobbs and the others who were present during this time denied that he was touched. Hobbs was corroborated in this respect by two factors. The confession was made about 5:30 in the presence of the district attorney general, one of his then assistants,

and others. These parties all testified that Steele showed no signs of any punishment or injuries about the face, where he claimed he was struck by this deputy, and in addition thereto, a picture of him was taken two days later, about April 8. This picture was examined by the trial judge in passing on the question as to whether defendant was struck. In overruling the objection to the admissibility of the confession, the trial judge stated that he had examined the picture carefully, that it was the type of picture which would show minute bruises, and that this picture showed no evidence of any bruises on the face of Steele. The only testimony which tends to corroborate Steele in his claim that he was beaten is the testimony of his father that he visited him on April 11, and that he then showed evidence of beating. As pointed out by the trial judge, this factor was too remote to have any probative value when opposed by the testimony of persons who saw Steele at the time of the confession, and likewise when opposed to this picture by reason of the fact that violence often occurs between prisoners in jail and these bruises might have been sustained by this method.

It is well to remark here that neither of the defendants testified in their own behalf, but contented themselves by introducing evidence that they had been drinking on the night in question, and also introduced testimony as to their good reputation.

█ █ We do not think that the confessions were erroneously admitted. Furthermore, the testimony of Stevens, and especially that of Simpson, is strong corroboration of the alleged confessions. Simpson is corroborated by the fact that the record shows that shortly after the commission of the crime he made a statement to the of-

ficers in substantial accord with his incriminating testimony on the present trial. This prior statement was admissible under our authorities. *Legere* v. *State,* 111 Tenn. 368, 77 S. W. 1059, 102 Am. St. Rep. 781. The confessions, and especially that of Bearden, appear to be true. The record shows that following his confession, Bearden took the officers to the spot and pointed out the scene of the assault.

■ ■ In the face of all this testimony, there stands nothing except the testimony with reference to the good reputation of the defendants, and that they were drinking excessively when this alleged assault was made. While this Court has always recognized that the good reputation of a defendant stands as a witness for him, it does not overturn the array of evidence introduced by the State showing the guilt of the defendants in this case. The intoxication of the defendants will not mitigate the crime in a case of this nature. *Walden* v. *State,* 178 Tenn. 71, 156 S. W. 2d 385. That case holds directly that intoxication is of no value except in cases where a specific intent to commit the crime is necessary, and that in case of criminal assault, no intent is requisite other than that evidenced by the doing of the acts constituting the offense.

■ Error is assigned as to the action of the trial court in permitting the witness Cruze, an investigator of the district attorney general's office, to testify. It seems that the rule had been called for but Cruze had remained in the courtroom, and objection is made to his testimony on this ground. In the action of the trial court in this respect there was no error. *Hughes* v. *State,* 126 Tenn. 40, 148 S. W. 543, Ann. Cas. 1913D, 1262.

■ ■ The next insistence is that the testimony of Simpson should not have been accredited by the jury on the ground that he contradicted himself. This witness explained this contradiction and testified that his former failure to give testimony was due to the fact that a night or two before the trial he was visited by four Negroes who threatened to kill him and his wife if he did not testify "right" on the trial. Simpson's testimony was harmful to defendants and is corroborated by a previous statement made by him before he was threatened. *Ferguson* v. *State,* 138 Tenn. 106, 196 S. W. 140; *Christian* v. *State,* 184 Tenn. 163, 164, 197 S. W. 2d 797; *Colbaugh* v. *State,* 188 Tenn. 103, 216 S. W. 2d 741, all hold that where there be contradictions the question as to what shall be believed lies with the jury and not with the court.

■ The next complaint is that the trial court was in error in not permitting the jury to hear all the witnesses with reference to the circumstances under which the confessions were made. The trial court followed the approved procedure in this State and conducted a preliminary hearing at which both the prosecution and the defendants were allowed to present evidence with reference to the admissibility of the confessions. The trial judge held the confessions admissible, and thereupon the testimony of the witnesses as to such confessions was heard in the presence of the jury. Counsel for defendants made no effort to cross-examine the witnesses with reference to the circumstances under which the confessions were made, and if counsel desired at that time to lay before the jury such circumstances, it was their duty to develop them by cross-examination of the witnesses, and the trial judge will not be placed in error merely because of his own volition he did not undertake the examination of such witnesses to develop such circumstances.

■ The last assignment of error is to the effect that the trial court was in error in not appointing counsel for the defendants prior to their indictment and arraignment. There is no obligation on the part of the trial court to appoint counsel for one charged with crime until arraignment on the formal charge against him. It is only when the indictment is returned that it can be ascertained that such person will be charged with crime and entitled to the appointment of counsel.

The defendants have been twice convicted of this crime and their punishment has been fixed at death in each instance. The trial judge has been very careful to preserve each and every right the law accorded to the defendants.

We are of opinion that the defendants have had a fair trial, and that there is no merit in the assignments of error. It results, therefore, that the judgment of the lower court must be affirmed and the date of execution set for Tuesday, January 24, 1950, as the law provides.

All concur.