LEVI HARRIS

*v.*

STATE OF TENNESSEE.

(*Nashville*, December Term, 1959.)

Opinion filed February 5, 1960.

Mary Guidi, Memphis, for plaintiff in error.

Thomas E. Fox, Assistant Attorney General, for the State.

278

Mr. Justice pro tem S. A. Marable delivered the opinion of the Court.

The plaintiff in error, hereinafter referred to as the defendant, was indicted, tried and convicted in the Criminal Court for the offense of assault and battery upon a female over the age of twelve years, with the intent, forcibly and against her will, to have unlawful carnal knowledge of her, and his punishment was fixed at not more than twelve years in the State penitentiary.

From this verdict of the jury and judgment of the court the defendant has appealed and assigned a number of errors, which, for convenience, may be summarized briefly as follows: (1) That there is no evidence to sustain the verdict of the jury, which is contrary to the law and facts in this cause, and the evidence preponderates in favor of the innocence of the defendant and against his guilt; (2) that the trial court erred in overruling the defendant's plea of former jeopardy and former conviction; (3) that the trial court erred in overruling the defendant's motions to quash the warrant issued for defendant's arrest, and the indictment subsequently returned against him, on the ground that said warrant was void, as alleged in Assignments Nos. 3, 4 and 5; and, (4) that the verdict of the jury is void because the sentence imposed by the jury is not authorized by law in that it did not state all of the elements of the offense,

and that no legal judgment of the court can be predicated thereon, as alleged in Assignments Nos. 6 and 7.

The following facts appear from the evidence submitted in this case:

One Roxie Logan, a negro woman, eighty-four years of age, lived alone in a small two-room house situated in the back yard of Bernice Redditt's home and about thirty feet therefrom. On November 20, 1957, she had been engaged in some employment away from her home and returned that evening about dusk. After lighting a lamp in her room, eating her evening meal and latching the front door from the inside, she turned the light in the lamp down, but left it still dimly burning, and went to bed with her clothes on, it being a very cold night. There was a small window in this room from which some of the panes of glass were out, and the opening left thereby covered by pieces of paper and tin. An empty oil drum or barrel had been kept in the yard back of her home and about thirty-five or forty feet therefrom, and was apparently in its usual place that evening when Roxie Logan returned to her home.

Later during the night the old negro woman was awakened by a noise, and looking up she saw a man, later identified as the defendant, a negro then eighteen years of age, standing about the middle of the room. According to her testimony, "he came and fell down on the bed, just like anybody would, just laid down on the bed. He came to the bed and laid across the bed on me, on top of the cover." She further testified that he made an indecent remark, and put his hand over her mouth when she began screaming, and told her to "hush hollering" or he would kill her. Her testimony shows that she

struggled and fought with him all the while, and did what she could to resist him. During the struggle on the bed the defendant choked her, and put his hand on her bare leg, the bed covering evidently having become disarranged while they were struggling. Both finally slipped from the bed to the floor where the struggle and her outcries continued. She stated that the defendant was on her while on the floor, that he was ''stretched out on me'', and that he was on her when the officers arrived pursuant to a call made by Bernice Redditt whose attention had been attracted by the screaming and outcries of the old woman.

During her struggles with the defendant, Roxie Logan was struck and choked by him, had four teeth knocked out, and sustained a cut over one eye which bled profusely staining her own clothing and the clothing of the defendant, all of which evidenced the terrific struggle between the parties.

The officers received Bernice Redditt's telephone call to come to the home of Roxie Logan about 1:22 a.m. November 21, 1957, and they reached her home about fifteen minutes thereafter. The defendant had evidently entered the home sometime about 1:00 a.m., on above date, or shortly before that time. When the officers arrived they found the window in Roxie's room torn out and open, and the oil drum above mentioned standing under the window.

According to Deputy Sheriff J. M. Thomason, one of the two officers responding to Bernice Redditt's call, he flashed a light through the open window, and saw the defendant jump up, start towards the window through which he had entered the room, and then run back to the

door in his efforts to escape. He was arrested by the other officer, Deputy Sheriff Carlisle, as he emerged from the doorway of the house. Deputy Thomason testified that shortly after the defendant was arrested he had a conversation with him as follows: "We asked him what he went in there for, and he said he went in for money; and he said after he got in there, with her in bed, and saw her in bed, he decided to rape her."

Whether the defendant intended, when he entered Roxie Logan's home that night, to obtain money or commit the offense of burglary, the only reasonable conclusion that can be reached, from the undisputed facts as to what took place in the room thereafter, is that he also had an intent to rape her, formed either before he broke into the house, or after he had gained entrance and saw her on the bed, and that he did attempt to do so. If he had any other intention upon entering the house, that intention was evidently changed when he saw her on the bed, and he then sought to commit the offense for which he was charged and convicted in this case.

The defendant offered no explanation of his presence in Roxie Logan's house that night. In his testimony at the trial, he stated that he became so drunk on the night of November 20, 1957, while at a tavern known as the Bungalow Inn, that he did not know what happened thereafter, that the last thing that he remembered was sitting at the table at the Inn, with some others, where they had been drinking intoxicating liquors, and that he knew nothing after that until he was in the Juvenile Court some time following his arrest. He testified that he did not know whether he went to Roxie's house, except what he had been told, and that he had no knowledge of the event at all because of his intoxication.

To support his contention of intoxication, the defendant offered two witnesses. The first witness, Tommy Williams, a young negro friend, stated that he stopped at the Bungalow Inn that night, "about midnight", to pick up another friend named Earl, and that he saw the defendant there with his head on a table, and also saw some beer, whiskey and wine on the table; that the defendant didn't act like he was able to hold his head up or know what he was doing. On cross-examination, this witness stated that he didn't know really what kind of condition the defendant was in that night.

The second witness for the defendant, Earl Ellington, a young negro man, testified that he was at the Bungalow Inn on the night in question, about "twelve o'clock", and saw the defendant there; that the defendant was as drunk as anybody could get, that he couldn't stand up and was "laying over", but said that he had not been drinking with defendant.

If the defendant had been as drunk as he claimed to be at 12:00 o'clock, on the night of November 20, it is difficult to understand how he could have reached the home of Roxie Logan within the period of one hour or less thereafter, have gotten the oil drum and carried it some thirty-five or forty feet to the window of the house, climbed thereon, and broken open the window in the house to obtain entrance thereto.

Four witnesses for the State, Roxie Logan, Bernice Redditt, Deputy Sheriff Thomason and Deputy Sheriff Carlisle, all of whom were present and saw the defendant at the home of Roxie Logan that night, testified that he was not drunk and that they detected no odor of intoxicants about him. The only testimony to the contrary is

that of the defendant, supported only in part by the two witnesses introduced by him, as above stated, who saw him about an hour prior to the happening of the incident at Roxie Logan's home.

■ The proof in the case, as a whole, is clearly convincing that the defendant was not drunk, or under the influence of intoxicants, when he was at Roxie Logan's home on the early morning of November 21, 1957.

In addition to the foregoing, the State introduced in evidence at the trial a written statement, signed by the defendant, which could hardly be construed otherwise than as an admission of his guilt. In this statement the defendant said:

"I went to Roxie Logan's home about 1:00 A.M., and pulled the paper out of the window, put a iron drum under the window. * * * After I got in she went to screaming, so I hit her and asked her if she had any money, but she just kept on kicking and screaming, and I asked her if she would like to have some happiness, * * *"

He then went on to say in the statement that he had been to the Bungalow Inn, that he went to Roxie Logan's house looking for money, that he wasn't going to rape her, that he was drunk, and that he didn't know why he placed his fingers on her person. He further said in the statement, that he put his hand over her mouth, hit her, got blood on his clothes, that it was the first time he had been in that house, that he had been in the house about twenty minutes before the police arrived, and that he had gotten up on the bed on his knees with his pants open.

The foregoing statement was made at the suggestion of Deputy Sheriff John L. Carlisle, head of the Homicide Division of the Shelby County Sheriff's Office, on November 22, 1957, in the Criminal Courts Building in Memphis while the defendant was under arrest.

■ The defendant objected to the introduction of said statement as evidence on the ground that it was made under duress and through fear, which objection the trial court overruled. The proof amply shows that the statement was not made under duress or through fear, but that it was freely and voluntarily given, that there were no threats or promises of immunity made, that the defendant was advised of his rights and he was not subjected to any cause for fear.

We, therefore, think that the action of the trial court was correct in overruling the objection of the defendant to the introduction of said statement, and admitting same as evidence for the jury to consider.

We are further of the opinion, as heretofore indicated, that the evidence is wholly insufficient to sustain the defendant's contention that he was so intoxicated when he was apprehended at the home of Roxie Logan that he did not know what he was doing, and that the proof offered by him to that effect is wholly unsatisfactory; but, even if he had been drunk at the time, especially when not of such character as to dethrone his reasoning power to such an extent that he was unable to distinguish between right and wrong, and render him unable to form in his mind an intent to commit the crime for which he is here charged, all of which the defendant has failed to show, and the proof amply disproves, such voluntary

drunkenness would be no excuse for the crime here committed. *Rhodes v. State,* 41 Tenn. 351; *Walden v. State,* 178 Tenn. 71, 156 S.W.2d 385; *Steele v. State,* 189 Tenn. 424, 225 S.W.2d 260; *Thomas v. State,* 201 Tenn. 645, 301 S.W.2d 358; and numerous other authorities unnecessary to here cite.

■ After a careful consideration of all of the evidence in this case, we are of the opinion, and find, that there is ample evidence to sustain the verdict of the jury, that said verdict is not contrary to the law and the facts, and that the evidence does not preponderate in favor of the innocence of the defendant.

The defendant has excepted to the action of the trial court in overruling his plea of former jeopardy and former conviction, and has assigned error therefor.

■ The defendant insists that he has already been prosecuted for the offense of burglary carved out of the evidence upon which the conviction in the present case is based, and has been convicted in the Criminal Court of Shelby County for that offense, from which conviction an appeal to this Court is presently pending, and because of which facts his plea of former jeopardy and former conviction should be sustained. Granting the facts to be as stated, and that the defendant was convicted of burglary arising out of incidents concurring at the home of Roxie Logan on the same night that he is charged with having assaulted her with intent to commit rape, it is manifest that there were two different and separate offenses committed by the defendant at that time, and the conviction for one is not a bar to a prosecution for the other.

Section 10, Article 1, of the Constitution of Tennessee, provides as follows: "That no person shall, *for the same offence,* be twice put in jeopardy of life or limb." (Italics supplied.)

The offenses of burglary and assault upon a female with intent to commit rape do not constitute the same offense, but are entirely distinct and unconnected offenses.

"* * * if the same acts constitute two different crimes, conviction of one is not a bar to conviction of the other * * * The identity of the former offense with the one charged depends on whether the defendant was put in jeopardy for the identical crime and not whether the defendant had been tried for the same act." Underhill Criminal Evidence (3d), secs. 315, 318.

" 'The general doctrine is plain,' says Mr. Bishop, 'and there are no conflicts of authority upon it, that, in the words of the Constitution itself, to entitle the prisoner to protection, the second jeopardy must be for the "same offense" as the first. If, therefore, a man has either been convicted or acquitted of one crime, he may still be prosecuted for another:' 1 Bish. Crim. Law, sec. 1049." *State v. Ross,* 72 Tenn. 442, 443, 444; *Wright v. State,* 76 Tenn. 563, 564.

"* * * In *Dowdy v. State,* 158 Tenn. 364, 13 S.W.2d 794, 795, this court cited previous decisions as observing the spirit as well as the letter of the law against double jeopardy and double punishment, holding that 'acquittal or conviction in one of several related offenses resulting from the same transaction bars subsequent prosecution for the others,' but expressly pointed out that the rule 'does not extend to

unrelated substantive offenses arising out of the same transaction'—citing *State v. Ross,* 72 Tenn. 444.'' *Smith v. State,* 159 Tenn. 674, 683, 21 S.W.2d 400, 402.

The case of *Wilcox v. State,* 74 Tenn. 571, relied upon by the defendant as authority in support of his plea, is not a case here in point, as it deals with two related offenses, and not two entirely distinct and unrelated cases as presented in this case. While essential elements or ingredients of the offenses involved in the Wilcox case constituted important and material parts of both offenses, as held by the Court, no such relation or connection exists in the case here at bar.

The plea of former jeopardy and former conviction, made by the defendant in this case, therefore, is without merit, and the action of the trial court with reference thereto is without error.

The assignments of error, Nos. 3, 4 and 5, filed by the defendant challenging the validity of the warrant originally issued for the defendant's arrest in this case, as well as the validity of the indictment subsequently returned against him, are likewise without merit. Whether the warrant was good or bad is not material to this case. The arrest, under the circumstances shown by the record in this case, would have been proper without a warrant. Section 40-803, T.C.A. There is no constitutional immunity from an unlawful arrest. *Satterfield v. State,* 196 Tenn. 573, 269 S.W.2d 607. The indictment appears to have been regularly and properly returned, and no valid objection appears thereto.

Assignments of error Nos. 6 and 7 complain that the verdict of the jury is void and unauthorized by law in that it did not state all of the elements of the offense, and

that no legal judgment of the court can be predicated thereon.

The verdict rendered by the jury in this case is as follows:

"We, the jury, find the defendant guilty of assault and battery with the intent to commit rape, as charged in the indictment, and fix his punishment at no more than twelve (12) years in the State Penitentiary."

The indictment clearly sets forth the charge against the defendant in the following language:

"The Grand Jurors of the State of Tennessee duly elected, empaneled, sworn and charged to inquire in and for the body of the County of Shelby, in the State aforesaid, upon their oath present that Levi Harris, alias 'Willie Levi Harris', late of the county aforesaid, heretofore, to-wit, on the 21 day of November A.D., 1957, before the finding of this indictment, in the county aforesaid, did unlawfully and feloniously commit an assault and battery upon the person of Roxie Logan, a female over the age of twelve years, with the intent to have unlawful carnal knowledge of the said Roxie Logan forcibly and against her will, against the peace and dignity of the State of Tennessee."

The jury, in their verdict, found the defendant guilty of assault and battery with the intent to commit rape, *as charged in the indictment*. This reference to the indictment, the sufficiency of which is not questioned by the defendant, clearly incorporates same into and as a part of the written verdict so returned. We think that this was sufficient, and that the verdict so returned was a good and valid one. The judgment of the court predicated thereon is likewise a valid judgment.

In the case of *Wallace v. State,* 70 Tenn. 29, the Court, in discussing the verdict returned by the jury, commented as follows:

"In examining this record, and looking to the plain and very explicit language of the charge as we have quoted it above, there can, it seems to us, be no doubt that the jury understood the offense complained of exactly as the Court and attorneys understood it. In this view the objection taken presents the question, Did the jury mean by its verdict to ignore the offense charged, and return a verdict of guilty of another? We think not. The language of the record is, 'They (the jury) find the defendant guilty of obtaining money under false pretense, as charged in the indictment.' How charged in the indictment? Why, by false pretenses inducing the prosecutor to endorse the draft. If the case is cleared of this false pretense, then no crime has been committed. No fraud has been practiced upon any other than the prosecutor. No other person's signature has been fraudulently obtained. No other person has parted with personal property because of the fraud, and upon no other person has a forgery been passed, and no other 'false pretense' is 'charged in the indictment.' So it must necessarily and of course follow, that the jury in the use of the term 'false pretense as charged in the indictment,' had reference to the false pretense practiced upon Coots, the only false pretense laid in the indictment. The language cannot by any possible construction have reference to anything else." Also see Section 40-2707, T.C.A.

It results from our findings and conclusions above stated that all of the assignments of error submitted by

the defendant in this case are overruled, and the judgment of the lower court affirmed.

As appears from the record, the defendant has been continuously incarcerated in the Shelby County Jail since December 19, 1958, and he should be given credit for the time that he has been so confined on his sentence in this case.