JIMMIE A. HAYES, Plaintiff in Error, v. STATE OF
TENNESSEE, Defendant in Error—470 S.W.2d 950

May 19, 1971.

Certiorari Denied by Supreme Court September 7, 1971.

Hugh W. Stanton, Jr., Walker Gwinn, Memphis, for plaintiff in error.

David M. Pack, Attorney General, Robert H. Roberts, Assistant Attorney General, Nashville, Phil M. Canale, Jr., District Attorney General, Sam Catanzaro, Jr. and John Pierotti, Assistant District Attorneys General, Memphis, for defendant in error.

MITCHELL, J.  Jimmie A. Hayes, who will be referred to as defendant or by name, was indicted by the Grand Jury of Shelby County, Tennessee, on December 12, 1969 or two separate indictments, one indictment no. B-24353, charged robbery by the use of a deadly weapon, to wit, a pistol, of Beverly Parrish of $3.00 on October 11, 1969, and the other indictment no. B-24351 charged assault and battery upon Beverly Parrish a female over 12 years of age with intent to have unlawful carnal knowledge of her forcibly and against her will on October 11, 1969.

The public defender was appointed on December 19, 1969 to represent the defendant.

The defendant was committed to the Central State Hospital for an examination concerning his sanity. On March 19, 1970 the hospital reported the defendant was

found to be legally sane. The trial judge also conducted a hearing and found the defendant sane and capable of standing trial.

After motions for change of venue, and to dismiss the indictments were overruled, the defendant objected to being tried on both indictments at the same time, which objection was also overruled.

On May 24, and 26, 1970 the defendant was tried on the two indictments together at the same time, which resulted in a jury verdict on no. 24351 of guilty of assault and battery upon a female over the age of twelve years with intent to have unlawful carnal knowledge of her forcibly and against her will as charged in the indictment and the punishment fixed at imprisonment in the State Penitentiary for not more than twenty-one (21) years. In No. B-24353 the jury reported a verdict of guilty of robbery by use of a deadly weapon as charged in the indictment and fixed the punishment at imprisonment in the State Penitentiary for thirty-five (35) years. Upon which the trial judge Honorable Arthur C. Faquin, Jr., pronounced judgment and ordered the two sentences to be served consecutively.

After his motion for a new trial had been heard and overruled the defendant appealed and assigned errors.

A brief statement of the facts may be helpful in properly evaluating the assignments of error.

According to the testimony of Miss Beverly Joyce Parrish, age 20, a student at Baptist Hospital in Memphis, she was on October 11, 1969 living in an upstairs 3 bed-

room apartment no. 20 at 197 North Merton. She introduced exhibit #1, a picture of part of the building and entrance to her apartment.

Her two room-mates were out and she was alone in her apartment about 9:00 or 9:30 P.M., dressed in a yellow flowered sleeveless pants dress buttoned down the front, commonly called culottes, and under clothes. She was lying on the bed dozing. The light was on in her walk-in closet and in the living room. The door to her room had been closed and she was awakened by her door being opened, thinking it was one of her room-mates, she looked to see who it was, and saw a white man standing in her doorway. He was about 5'11" or 6' and weighed about 170 with dark hair, ruffled, looked like he had been out in the wind and he was carrying a black automatic pistol in his hand. He told her not to move or scream and not to look at him, that he would shoot her. He instructed her to pull the covers over her head which she did. She could hear him moving around in the room opening her purse and jewelry box, going through her things and dresser drawers. She had $3.00 in her purse. He went to the closet and got a pair of white shorts, put them over her face, and tied her hands in front of her. She asked him what he was doing and he kept telling her to be quiet. After he had covered her head he turned on the lights. Then he pulled the covers back and she asked him what he was going to do. He started unbuttoning her clothes. She tried to get him to stop but he told her to be still or he would shoot her. She could feel the gun cold on her stomach. He pushed her underclothing aside and tried to get to her with his hands, then he unbuttoned her clothes more. She kept trying to get her legs back together, but

he held them apart. He said he was going to molest her. She could hear him unzip his trousers, and he dropped something sounded like change coins. From the description this witness gave, the defendant committed a vile, perverted sex act and then did commit an assault and battery upon her with intent to have unlawful carnal knowledge of her forcibly and against her will.

He ripped and tore her pants suit and cursed because he could not accomplish his purpose. He shoved her back around on the bed, covered her, walked across the room and told her not to move or scream for five minutes, then he walked down the hall, and she could hear his footsteps outside on the little porch. She got up, freed her hands, closed and locked the doors, looked for her other roommate and called the police. There were some coins still there on the floor when the police arrived. She gave the police a description of the man.

Miss Parrish identified the defendant in the courtroom as the man who entered her apartment, robbed her and assaulted her and attempted to have intercourse with her. She identified the defendant also in the police line-up.

She testified that if she hadn't seen the defendant in the line-up she could identify him here in court at the trial.

Dr. C. R. Green, whose eminent qualifications were established, testified he examined Miss Beverly Parrish. She had slight bruises on the left thigh inner aspect. The vaginal examination showed no evidence of trauma or irritation and the hymenal ring was intact, no sperm was found. She showed no signs of having sexual intercourse.

The fact the the hymenal ring was intact meant in all probability that penetration had not taken place.

J. M. Johnson, Memphis Police Department testified October 11, 1969 he was riding in a ward car with his partner, J. M. Holcomb working the 3:00 P.M. to 11:00 P.M. shift. The call came out as an attempt to rape. They went to 197 Merton, apartment 20, Beverly Parrish, a female white was there, highly upset and disturbed. In the bedroom the bed was all ruffled up, drawers pulled out, clothing scattered on the floor, some change (money) beside the bed. Miss Parrish was wearing a yellow and white flowered culotte. They obtained a description of the person responsible and put out a broadcast.

H. M. Lawson, Detective of the Theft Bureau, 17 years with the Police Department testified Sanders was his partner of the C. I. D. October 11, 1969. He and Sanders received a call to 197 North Merton around 10:10 P.M., it was an attempt to rape call. At the time they arrived the victim was in a state of hysteria, she was crying, the apartment was in disorder.

C. D. Dunn, testified he was employed by the Memphis Police Department, November 10, 1969. About 1:45 P.M. he talked to the defendant after he was taken in custody, in presence of Lt. W. H. Butler, Lt. D. F. Smith, T. E. Merritt and J. A. Blalock in the Burglary Squad Room. He was advised of his rights and made a free and voluntary statement. He was also advised of his rights about a line-up and he signed a waiver of his right to a lawyer and he said he was willing to appear in a line-up. There were six people in the line-up. Miss Beverly Parrish

picked out and identified the defendant in the line-up as the man who robbed and assaulted her.

In his statement or confession to Lieutenant Dunn in the presence of Lt. S. H. Butler, Lt. D. F. Smith, Detectives T. E. Merritt, G. E. Dunn and J. A. Blalock, the defendant Jimmie Austin Hayes said he was 39 years of age, was a resident of 208 Mary Drive, Kennet, Missouri. That he came to Memphis for the purpose of getting some money because he had gone broke on the dog track.

"That about 10:00 P.M. on the night in question, he drove his white 1968 Fairlane car and parked it about a block off Poplar close to the park. That he was going to burglarize an apartment to get some money. That he chose apartments instead of business places because to break into a business place it was necessary to break glass and someone will hear it. That he found an apartment unlocked and went in looking for money. That he had a pair of black socks on his hands. That he was checking closets, and he opened this other door he thought was a closet and found it was another bedroom. That when he opened the door he saw a young white girl lying on the bed. There was a light in the bathroom and in the closet behind. He shut the door and told her to be quiet and he wouldn't hurt her. He asked for her money and she said she didn't have any, that it was all in her purse. That he picked up her purse, off the dresser next to the bed, and spilled everything out of it on the floor. It was a couple of dollars and some change. He searched the apartment and didn't find anything. That he covered her face and sat down on the edge of the bed and started playing with her. Then he started kissing her all over her body. He

did not try to kiss her on the mouth, her face was covered up. That he tore the crotch out of her short pajamas. That she kept screaming and moving around on the bed. He was trying to have intercourse with her. That he had the pistol in his pocket."

To omit the unprintable details the defendant's language described a determined effort by his bodily contact to have unlawful carnal knowledge of her forcibly and against her will. He admitted that he did by force attempt to penetrate her but did not accomplish his purpose. He admitted he did attempt to have sexual intercourse with this 20 year old girl.

There is in the bill of exceptions a complete written confession of the defendant with his name signed to it.

Before allowing any of the defendant's admissions or confessions to be received in evidence the trial judge, in the absence of the jury, conducted a full and fair hearing and determined they were made freely and voluntarily after the rights of the defendant had been full explained to him.

Lt. D. F. Smith, Memphis Police Robbery Division, testified he was present with Lt. Butler, Lt. Sawyer, and Detective Merritt before the defendant made a statement. He was advised of his constitutional rights by reading the rights card to him. He made an oral statement freely and voluntarily. He signed a waiver of his right to an attorney at the line-up and agreed to appear in a line-up. There were 6 or 7 in the line-up when Miss Beverly Parrish viewed it. She identified the defendant Jimmie Aus-

tin Hayes in the line-up. He identified a picture of the line-up.

Several other police officers testified in which they corroborated the testimony of the victim Miss Beverly Parrish, and in the confession of the defendant.

The defendant did not elect to take the witness stand and testify in the presence of the jury.

## ASSIGNMENTS OF ERROR.

The defendant has made 23 assignments of error. Two of these assignments are that the evidence preponderates against the verdict, and that there is no evidence to sustain the verdict. These two assignments will be considered together and must be tested by the rule that it is well established by numerous decisions of the Supreme Court of Tennessee, and of this Court, that a verdict of guilty, approved by the trial judge, accredits the testimony in favor of the State, and establishes the State's theory of the case. Under such a verdict the presumption of innocence disappears, and upon appeal, that presumption of innocence is replaced by a presumption of guilt. This Court is not permitted to reverse a conviction upon the facts unless the evidence clearly preponderates against the verdict of the jury and in favor of the innocence of the accused. We may review the evidence only to determine whether it preponderates against the verdict, and the defendant on appeal has the burden of showing that the evidence preponderates against the verdict and in favor of his innocence. McBee v. State, 213 Tenn. 15, 372 S.W.2d 173; Gulley v. State, 219 Tenn. 114, 407 S.W.

2d 186; Brown v. State, Tenn.Cr.App., 441 S.W.2d 485; Haas v. State, Tenn.Cr.App., 455 S.W.2d 634.

We find there was ample evidence to support the verdict and that the defendant has failed to carry the burden of showing that the evidence preponderates against the verdict and in favor of his innocence.

█ The defendant has questioned the legality of the trial judge's order that the two sentences run consecutively or cumulatively. T.C.A. 40-2711 provides that this matter is in the discretion of the trial judge and is reviewable by the Supreme Court on appeal. In Bundy v. State, 176 Tenn. 198, 140 S.W.2d 154, Bundy was convicted in the Criminal Court of Hamilton County of robbery and his punishment fixed at five years in the penitentiary. While he was on bond in the Hamilton County Criminal Court to answer this charge of robbery he was sentenced to the penitentiary from Williamson County in another case. The judgment in Hamilton County provided the sentence there imposed would run consecutively to the sentence imposed in Williamson County. In the Bundy case, *supra,* our Supreme Court quoting 15 Am. Jur. sec. 470, page 126 said:

"There is no doubt that a court may impose a sentence to commence upon the termination of another sentence imposed by another court unless a statute prohibits it. If a court exercising jurisdiction in criminal cases may lawfully impose a sentence to begin in the future on the expiration of a prior sentence, it can make no possible difference whether the prior sentence was imposed by the same or by some other court deriving its power from the same authority. Jurisdiction to inflict

cumulative punishment is dependent, not on the accident that the offender has been convicted twice or oftener before the same tribunal, but on the fact that distinct violations of the law have been committed by one individual whose malefactions merit separate and, therefore, cumulative penalties."

"The text is well supported by authorities. See Annotations, 5 A.L.R., 380, 53 A.L.R., 625, 4 Anno.Cas., 719. See also, 16 C.J. 1370.

Our conclusion is that the trial court had the authority under the law to impose the sentence to commence upon the termination of the sentence thereafter imposed on plaintiff in error in Williamson County."

We hold the trial judge did not abuse his discretion in ordering the two sentences to run consecutively.

■ In this connection the defendant attacks the legality of the court's action in trying these two cases together based on two separate indictments, robbery by the use of a deadly weapon in one case and assault and battery with intent to rape in the other case.

The consolidation of separate indictments as in the case at bar was in the discretion of the trial court and we find no abuse of his discretion and no evidence of prejudice to the defendant. State ex rel. Gann v. Henderson, 221 Tenn. 209, 425 S.W.2d 616 where it was said that:

"Whether the indictments should be consolidated for trial is discretionary with the trial court. While consolidation will be refused when the defendant would be

prejudiced thereby, his unsupported statement is insufficient to establish that joint trial of several charges would be prejudicial.'' 5 Wharton, Criminal Law and Procedure, sec. 1942.

''Ordinarily consolidation for trial or refusal to order a severance or separate trial is permissible or proper where the offenses charged are similar, related, or connected, or are of the same or similar character or class, or involve or arose out of the same or related or connected acts, occurrences, transactions, series of events, or chain of circumstances, or are based on acts or transactions constituting parts of a common scheme or plan, or are of the same pattern and committed in the same manner, or where there is a common element of substantial importance in this commission, or where the same, or much the same, evidence will be competent and admissible or required in their prosecution, and if not joined for trial the repetition or reproduction of substantially the same testimony will be required on each trial.'' 23 C.J.S. Criminal Law sec. 931.

■ The defendant next insisted that it was error to try him on two offenses committed against the same person in the same room on the same night and to convict him of the separate offenses and impose sentences upon him on both offenses, because it was all one continuous event. With this we cannot agree.

The proof shows from the testimony of the victim and the confession of the defendant that the robbery was committed and consummated before the assault and battery to rape commenced or perhaps before it was thought of. According to the defendant's confession he entered

the apartment for the purpose of getting money. That he told the victim to be quiet and not scream, and with pistol drawn after he had threatened the victim with death he asked where the money was and she told him. He then took the money from her purse and searched for more money. Becoming disappointed about finding such a small sum of money, he then went to her bed and sat down on the bed where she was lying. According to the testimony of the victim and according to the confession of the defendant, he then committed the assault and battery upon Beverly Parrish, a girl twenty years of age, with intent to have unlawful carnal knowledge forcibly and against her will.

In Wilkerson v. State, 211 Tenn. 32, 362 S.W.2d 253, it was said the defendant committed two separate and distinct crimes when he held up and robbed a liquor store and then robbed a customer who had entered the store. The opinion in that case quoted 22 C.J.S. Criminal Law sec. 298, page 788:

"Where accused robbed two or more persons at the same time a prosecution for one of such robberies does not prevent a subsequent prosecution for another."

In Harris v. State, 206 Tenn. 276, 332 S.W.2d 675 the court said:

"The defendant insists that he has already been prosecuted for the offense of burglary carved out of the evidence upon which the conviction in the present case is based, and has been convicted in the Criminal Court of Shelby County for that offense, from which conviction an appeal to this Court is presently pending,

and because of which facts his plea of former jeopardy and former conviction should be sustained. Granting the facts to be as stated, and that the defendant was convicted of burglary arising out of incidents concurring at the home of Roxie Logan on the same night that he is charged with having assaulted her with intent to commit rape, it is manifest that there were two different and separate offenses committed by the defendant at that time, and the conviction for one is not a bar to a prosecution for the other." * * *

"The offenses of burglary and assault upon a female with intent to commit rape do not constitute the same offense, but are entirely distinct and unconnected offenses."

We hold that when the defendant entered the apartment looking for money and with pistol drawn robbed Beverly Parrish, then formed the intent to have unlawful carnal knowledge of her forcibly and against her will and then made a determined effort to force her by bodily contact to submit to sexual intercourse with him, he committed two distinct and unconnected offenses and that the lesser is not merged in the greater offense.

■ The defendant's contention that the court erred in failing to inform the jury that he intended to order the sentences to run consecutively is untenable. The jury had nothing to do with whether the sentences should run concurrently or cumulatively, by statute T.C.A. 40-2711 supra, that is in the discretion of the trial judge.

■ The defendant has assigned as error the court's action in overruling his motions to dismiss the indict-

ments; his motion for a continuance; to change counsel; for change of venue; in admitting statements made by officers of the Memphis Police Department; in not holding that the police made a deal with the defendant; the court's failure to appoint an attorney before indictment and in failing to appoint an attorney from the bar association; the court's failure to notify him the date of the indictment; and the court's refusal to allow the newspaper article to be received in evidence, showing a discrepancy in Detective Smith's story that no deal was made.

These assignments are without merit. There was no evidence to justify a change of venue. The defendant who in his confession admitted he attempted to rape the victim but was unable to effect a penetration, seems to have been offended by the newspaper article which said he was charged with rape, and contends he had a "deal" with the police that he would not be charged with rape. The trial judge considered the defendant's motion for change of venue, for continuance and to dismiss the indictments and found them without merit. We find no abuse in the exercise of the court's discretion.

■ The trial judge, in the absence of the jury, patiently examined all the facts bearing on the defendant's confessions, heard the defendant's testimony on that question and all the other evidence concerning it, permitted the defendant to examine and cross-examine the witnesses, and zealously guarded the rights of the defendant even against the defendant's own statements and questions of an argumentive nature, and struck or deleted from the defendant's confessions evidence and admis-

sions of other crimes the defendant had committed or which he had been charged with. The trial judge found the confessions were lawfully obtained and after deleting damaging references to other crimes, received them in evidence. We hold that the evidence does not preponderate against the finding of the trial judge. Taylor v. State, 180 Tenn. 62, 171 S.W.2d 403; Raper v. State, 3 Tenn.Cr.App. 406, 462 S.W.2d 261.

We hold that the confessions were competent and were properly admitted into the evidence.

■ One of the assignments of error relied on by the defendant is that:

"The Court erred in allowing Mr. Catanzaro, the State's attorney, in his final argument, to exceed all bounds of proper rebuttal argument, to bring up new matters not touched upon in the closing argument of defendant and to make a recommendation as to the sentence to be imposed for the first time in his rebuttal argument, all of which was done over the objection of the defendant.

Defendant contends that the function of the first or opening argument of the State in a criminal case or the plaintiff in a civil case is to fully present the parties' contentions and recommendations as to verdict. Defendant then has the opportunity to present his contentions and to rebut any matter mentioned in the opening argument. However, when a court sets no limits on a rebuttal argument and allows a party to present his whole argument in chief as a rebuttal argument, a defendant is deprived of a rebuttal argument.''

The District Attorney in his opening argument to the jury had not made any recommendation about the punishment. The defense counsel in his argument called attention to that fact, and said:

"And as they have not, I will not make any recommendation, but simply tell you to return the verdict that truth and justice demands and ask you to remember that I have no chance to rebut anything that Mr. Catanzaro (District Attorney) says. All I ask is that you allow your reason and not your sense of emotion or passion or prejudice to control you."

The District Attorney in his closing argument said:

"Gentlemen, the State of Tennessee is going to make a recommendation as to the punishment"—

At that point defense counsel interrupted and said:

"Now, if the court please, I would think I would have the right to rebut that if he makes that on a final argument. There is no recommendation or punishment that I discussed."

The court overruled the defendant's objection and denied his right to rebut the District Attorney's argument in recommending the punishment. The District Attorney then recommend the jury fix the defendant's punishment at 100 years in the State Penitentiary for robbery by the use of a deadly weapon and 21 years for assault and battery with intent to have unlawful carnal knowledge of a female over 12.

The defendant does not contend that such a recommendation by the District Attorney, in respect to the punishment, was improper but that it was made at the wrong place in his argument and assigns the refusal of the court to allow him, in argument to rebut the District Attorney's recommendation. He insists he was deprived of the right to answer it or rebut it and that if the recommendation was to be made it should have been made in the District Attorney's opening argument and that he should have been allowed to rebut or answer the District Attorney's argument recommending punishment. In support of that contention defendant's counsel has cited 23A C.J.S. Criminal Law secs. 1089-1090, page 126:

"Permitting reply. The prosecuting attorney is entitled to reply to the argument for accused, but in so doing he cannot introduce any new line of argument not made in his opening argument. He must confine his closing argument to a fair discussion of the issues and to answering the argument of the defense. Where the prosecutor defers the statement of his case and of the law on which he relies until his second address to the jury, or presents points not referred to in his opening argument, or in the argument of accused's counsel, or where he is permitted to introduce additional testimony after counsel for accused has closed, the latter may and should be permitted to reply to the new arguments or evidence offered; but it is within the discretion of the court to refuse to permit counsel for accused to reply to improper remarks by the prosecuting attorney; and where the prosecuting attorney, after having waived his opening argument, merely answers the arguments of accused's counsel, without presenting

any new line of argument, the latter has no right to reply.''

Generally, improper remarks or argument to the jury should scrupulously be avoided by all attorneys. The rule that it is always the duty of the prosecuting attorney to treat accused in a fair and impartial manner applies to his conduct and arguments to the jury, and the rights of accused cannot be prejudiced by improper remarks. It is sometimes difficult, however, to draw the line between allowable argument and improper statements in argument, because the prosecuting attorney, and also the counsel for accused, has of necessity much latitude in the language or manner of presenting his side of the case consistent with the facts in evidence.''

Further along on that same subject C.J.S. has this to say:

''The right of argument contemplates liberal freedom of speech and range of discussion confined only to bounds of logic and reason; and if counsel's argument is within the limits of proper debate it is immaterial whether it is sound or unsound, or whether he employs wit, invective, and illustration therein. Moreover, figurative speech is legitimate if there is evidence on which it may be founded. Exaggerated statements and hasty observations are often made in the heat of debate, which, although not legitimate, are generally disregarded by the court, because in its opinion they are harmless.''

"There are, however, certain well-established limits beyond which counsel is forbidden to go; he must confine himself to the facts introduced in evidence and to the fair and reasonable deductions and conclusions to be drawn therefrom, and to the application of the law, as given by the court, to the facts."

"Subject to these limitations, the prosecuting attorney may with perfect propriety appeal to the jury with all the power, force, and persuasiveness which his learning, skill, and experience enable him to command, and of this character of argument accused may not complain even though he feels that his conviction may be traceable more directly to the argument of the prosecuting attorney than to the facts proved. Similarly, defense counsel is entitled freely to argue all questions properly within the issues of the case."

Whether to permit defense counsel to rebut the closing argument of the District Attorney was in the discretion of the trial court under 23 C.J.S. supra, and we find no abuse of his discretion.

All the assignments of error have been considered and are overruled.

The judgment is affirmed.

We commend court appointed counsel for the diligence and zeal with which he has ably represented the defendant in this case.

Walker, P.J., and Oliver, J., concur.