POLK *et al. v.* STATE.

(*Jackson,* April Term, 1936.)

Opinion filed May 23, 1936.

W. M. Mayo, J. D. Mosby, and F. B. Moorman, all of Somerville, for plaintiff in error.

W. F. Barry, Jr., Assistant Attorney-General, for the State.

Mr. Special Justice Davis delivered the opinion of the Court.

Plaintiffs in error stand convicted of the murder of Newfrey Graham; their sentence being fixed at death by electrocution. They were tried jointly.

Deceased was killed on the early morning of December 25, 1934. On that date, the sheriff had a warrant for the arrest of Polk, on the charge of stealing a pistol belonging to one Thomas. The sheriff found Polk, took a Mauser pistol from his person, and then took him to jail. Later, the body of the deceased was found. It was discovered that the Mauser pistol taken off the person of Polk belonged to the deceased, and was not the Thomas pistol, when the sheriff returned to the jail, and again searched Polk, and found the Thomas pistol and a billfold containing $50 in bills; the sheriff received information from Polk which caused him to place McGowan and Harris under arrest on the charge of murdering Graham. The sheriff relates confessions made to him by all these parties. The sheriff states that Polk denied stealing the Thomas pistol, and that he slapped him for lying to

him about it. After all of the parties had been arrested and placed in jail, the sheriff testified that Polk was questioned by him, in the presence of R. E. Ware, Herman Graham, and Albert Graham; that the parties were questioned in the presence of each other, and then taken out separately and questioned in the presence of officials and relatives of deceased; they were again questioned in the presence of each other, and the sheriff says that each accused the other of taking certain parts in the crime, and these accusations were denied in part by each of the parties; that finally, after considerable argument back and forth between the accused prisoners, they made certain statements. We are not able to determine from the record just what "certain parts" the prisoners accused each other of having taken in the commission of the crime, nor can we tell just what denials the prisoners made. And the uncertainty of the record in these respects is material, because it appears that the trial court excluded all alleged confessions which the sheriff testified the several parties made, except those at the preliminary hearing before the justice of the peace. The record recites that the evidence of the sheriff was that at the hearing before the justice of the peace each of the defendants made substantially the same statements first detailed by the witness, which statements were excluded, and which evidence was given in the absence of the jury. And the recital in the bill of exceptions is that, when the jury was recalled, the witness, the sheriff of the county, in the presence of the jury, detailed the statements of each of the defendants "as hereinabove set out at the justice of the peace hearing."

Now it appears from the record that Harris was a tenant on the farm of the deceased, and lived in Gra-

ham's yard; that McGowan was also a tenant, and lived only a few hundred yards from the home of the deceased. Harris, after his arrest and before the justice of the peace hearing, told the sheriff where he (Harris) had hidden his part of the loot taken from the deceased, under the house occupied by the witness; the officers took Harris to his home, where a search was made and no money was found under his house, whereupon the sheriff whipped Harris for lying about where he put the money. It does not appear whether this whipping was administered to Harris in the presence of the other prisoners.

McGowan had stated to the sheriff that he hid his part of the money taken from the deceased, under the house occupied by McGowan, and McGowan was taken to this house, made to crawl under the house, and there found two quarter dollars, which McGowan at that time stated was a part of the loot, but later denied such to be true.

It does appear that these prisoners were handled rather freely by the sheriff, and that they were or became wholly subjected to the orders of the sheriff. No doubt it was the belief of the trial court that the confessions at the jail, and made to the sheriff in his handling of prisoners, were induced by fear, and were not free and voluntary, and we assume that this is the reason the court excluded the confessions other than those made at the preliminary hearing.

██ The relations existing between the sheriff and his prisoners, the conduct of the sheriff toward them, and their subjection, must be taken into consideration in considering the competency of the confessions which the sheriff testifies were made at the preliminary hearing. One of the prisoners he had slapped, another he had whipped, the other he had forced to crawl under his own

home in search of evidence of his guilt, and, when the prisoners were arraigned before the justice of the peace, and evidence of their confessions and statements to the sheriff was given in evidence by the sheriff, in the presence of his prisoners, and they were then told by the sheriff that they could make a statement if they so desired, it amounted to little more than an admonition or order from the sheriff for the prisoners to corroborate him.

But a more serious question is presented as to the competency of the confessions before the justice of the peace. The record discloses that the prisoners were not advised by the justice of their right to counsel, were not warned that any statements that they might make could be used against them, and the justice of the peace took no steps whatever to protect the rights of the prisoners before him. All the record discloses is that the justice of the peace did not warn the prisoners, but that the sheriff himself stated to the prisoners, in the presence of the magistrate, that any statements which they made would be used against them, but, if they wanted to, they could make a statement in their own behalf.

It appears that the prisoners were without counsel on the hearing before the justice of the peace, and it does not appear that they were advised of their right to counsel. Their lives were at stake, and it was of the utmost importance that the rights of the prisoners, guaranteed them under the Constitution and statutes of the state, be preserved. It was the duty of the justice of the peace to inform the prisoners immediately when arraigned before him of the charge against them, and of their right to the aid of counsel in every stage of the proceeding. Code, section 11547. It was also the duty

of the justice of the peace to inform the prisoners of their right to make a statement in reference to the charges against them, and also to advise them of their right to waive the making of such statement. Code, section 11555. The justice of the peace wholly failed to perform these duties, and failed to give the prisoners the benefit of the rights guaranteed to them under our law. It was of no aid whatever that the sheriff told his prisoners that they could make a statement which could be used against them. This probably caused these ignorant negroes to believe that they were being called upon by the sheriff to make a statement. And, be that as it may, we think no safeguards were given these prisoners, upon their preliminary hearing, and that the alleged confessions there made, whatever they were, were incompetent and should have been excluded. The situation is not unlike that in *Cross* v. *State,* 142 Tenn., 510, 221 S. W., 489, 9 A. L. R., 1354, in which this court held that statements by a prisoner, before the committing magistrate, are incompetent, where the magistrate fails to advise the prisoner of his rights, and to warn him of the consequences of a voluntary statement. And, of course, the fact that the prisoners did not deny the testimony given against them on the preliminary trial, incriminating them, could not be regarded as admission of guilt, and the failure to make such denial could not be shown against them in the trial court. *Parrott* v. *State,* 125 Tenn., 1, 139 S. W., 1056, 35 L. R. A. (N. S.), 1073, Ann. Cas., 1913C, 239.

When the prisoners were arraigned at the bar of the trial court, one counsel was appointed to represent all three of them. It then developed that there was a controversy among the prisoners as to alleged state-

ments made as to each of them, etc., whereupon the trial court very properly appointed a separate counsel for each of the prisoners. Each prisoner then made a motion for a severance, each asking a separate trial. These motions were based chiefly upon the ground that the confession of each prisoner would involve the other, each claiming his innocence, and insisting that it would be prejudicial to try the prisoners jointly and let a single jury hear the alleged confessions made by each prisoner involving the other. Of course, if there had been separate trials, and competent confessions, such confessions could be introduced against the prisoners, even though tried separately. The question of granting or refusing a severance is one for the sound discretion of the trial court, and we do not disturb this discretion unless it is abused. *Morrow* v. *State*, 82 Tenn. (14 Lea), 475. We find no evidence of abuse of discretion, upon the question of severance, and hold that there is no error in denying the severance requested.

We are not content to visit the supreme penalty upon these negroes on this record. We hold that the alleged confessions before the justice of the peace were improperly admitted in evidence, and, of course, such confessions are highly prejudicial. For this error the convictions are set aside and the case remanded for a new trial. Upon such new trial, the trial court will be free to act upon the competency of any alleged confessions by the prisoners, or either of them, other than those given to the sheriff and at the preliminary hearing. As we understand the record, relatives of the deceased had free access to the prisoners while they were in jail, and it may be that one or more of the prisoners made free and voluntary statements to these parties, or others,

concerning their participation in this alleged crime. How this we do not know, nor attempt to say, but only make it clear that the trial court will deal with such confessions, if they arise, according to the facts developed on the hearing and the law applicable thereto.

Reversed and remanded.