Davis Van Zandt, Plaintiff in Error,

*v.*

State of Tennessee, Defendant in Error (two cases).

402 S.W.2d 130.

(*Knoxville,* September Term, 1965.)

Opinion filed March 2, 1966.

Petition for Rehearing Denied April 22, 1966.

Joseph J. Levitt, Jr., Knoxville, Broughton & Broughton, Knoxville, of counsel, for plaintiff in error.

George F. McCanless, Attorney General, and William H. Lassiter, Jr., Assistant Attorney General, for defendant in error.

Mr. Justice White delivered the opinion of the Court.

Upon presentation of the assignments of error and argument in support thereof at the bar of the Court, counsel for Van Zandt stated that these two cases could be disposed of in one opinion, which we now proceed to do.

In each case the plaintiff in error was indicted on January 22, 1965, in a three-count indictment, charging burglary, larceny, and receiving and concealing a coin telephone. In Case No. 55, the coin telephone was allegedly taken from the Manor Apartments, located at 107 Evergreen Lane, Knoxville, Tennessee, and in Case No. 58, the telephone was allegedly taken from 224 State Street, Knoxville, Tennessee. In Case No. 55 the plaintiff in error was convicted of petit larceny and sentenced to serve six months in the Knox County Workhouse. In Case No. 58, he was convicted of petit larceny and sentenced to serve eleven months and twenty-nine days in the Knox County Workhouse.

In each case the motion for a new trial was overruled and an appeal has been perfected to this Court, in which the assignments of error are exactly the same, towit:

The Court erred in permitting the introduction into evidence of the written statement of confession or admission against interest taken by the witness, C. W. Swift, on or about October 15, 1964, because said statement was taken in violation of the defendant's rights under the United States Constitution, including but not limited to the Fifth, Sixth and Fourteenth Amendments, and taken also in violation of his rights under the Constitution of the State of Tennessee.

There is no proof of the corpus delicti.

There was no material evidence introduced upon the trial of the cause to support the verdict of the jury.

The evidence preponderates against the verdict and in favor of the innocence of the defendant, Davis Van Zandt.

The Court erred in admitting into evidence a pay telephone, said telephone not having been properly identified as having anything whatsoever to do with the case on trial.

The State, in its brief, has correctly summarized the assignments of error in the following language: (1) the evidence preponderates against the verdict and in favor of the innocence of the defendant, in that there is no competent evidence in the record to show that the defendant committed the crime of petit larceny; (2) the court erred in permitting the State to introduce into evidence a written confession of the defendant because said confession was taken in violation of the defendant's constitutional right in that he was not afforded counsel prior to the soliciting of his confession; (3) there is no proof of *corpus delicti;* (4) the court erred in admitting into evidence a coin telephone on the ground that the telephone was not properly identified as the one which was allegedly stolen from the Southern Bell Telephone Company.

In Case No. 55 the State contends that the defendant, along with some others, ripped a telephone from the wall of an apartment house known as the Manor Apartments in Knoxville, took the money out of it, and threw it into a lake.

C. W. Swift, Security Supervisor of the Eastern Division of Southern Bell Telephone Company, testified that pursuant to his investigation of the theft of a company telephone located in the Manor Apartments, he, along with an associate, went to the Anderson County Jail, on October 15, 1964, where the defendant was being held by the Sheriff and talked with him. The defendant gave him a statement and upon the introduction of such

statement being offered into evidence, the trial judge very properly excused the jury and heard the testimony to determine its admissibility.

In the absence of the jury, Swift testified that prior to asking the defendant any questions, he told him that he did not have to talk to him; that he could remain silent; and that any statement that he made could be used as evidence against him in a court of law. He said the defendant never requested permission to see an attorney and that the defendant freely and voluntarily gave him a statement.

Van Zandt testified, in the absence of the jury, that he was arrested in Anderson County, on October 12, 1964, and that on the following morning he was interrogated by the Sheriff for two or three hours; that during this interrogation he told the Sheriff that he would like to have a lawyer; and that the Sheriff replied: "If I knew one I could call." Van Zandt also testified that the Sheriff gave him permission to call his people when it appeared that he did not know any lawyer.

Van Zandt said further that he had never been threatened by anybody prior to giving the statement to Mr. Swift. He said, however, that the Sheriff told him when he was trying to get him to confess that if he would cooperate the Sheriff would do all that he could to help him. The defendant also testified that on several days following his arrest he was questioned by law officers from four different counties.

The trial court, after hearing this evidence and examining the written statement given to Swift, held that it was voluntarily given and that the defendant had not been denied right to counsel. He, therefore, permitted the

introduction of the written confession but in so doing excluded certain parts of the confession which dealt only with the indictment in Case No. 58.

In the confession Van Zandt said that about three or four weeks prior to his arrest, he and some others whom he would not identify ripped coin telephones from five apartment houses in Knoxville. He said that the coin telephones were taken during the early morning hours between 1:00 A.M. and 5:00 A.M., and he admitted that he ripped a coin telephone from the wall at the Manor Apartments in the Fountain City area of Knox County.

Swift said that the defendant told him that after the telephone had been opened and the coins removed therefrom, he had thrown the telephone into a lake off North Shore Drive in Knoxville. Swift checked the lake but was unable to find the telephone. He later found it in possession of the Sheriff of Knox County, where he examined it.

Swift testified that the particular coin telephone taken from Manor Apartments had a serial and lock number and that the company had a record of each of these numbers.

He said that the company possessed a separate key which would open each coin telephone and that there was no master key to the cash compartment. He said that the telephone which was missing from the Manor Apartments had a key number E-60841, and that he had a key whose serial number matched the E-60841. Upon being shown a coin telephone the same was identified by Mr. Swift by its serial number as the one missing from the Manor Apartments. He inserted the key into the coin telephone which came from the company and it opened the cash compartment readily. He also called attention to the fact

that the number on the key was the same number as that on the telephone. He placed a value of $17.00 on the coin telephone taken from the Manor Apartments.

On cross-examination, Mr. Swift admitted that he had never been in the Manor Apartments and had never examined the wall where the coin telephone had allegedly been located. He admitted that his only knowledge of the location of the telephone and the fact that it was missing was based upon the records of the Southern Bell Telephone and Telegraph Company.

John Maples, a detective with the Knox County Sheriff's Office, testified that as a result of a radio call he went to the lake off North Shore Drive in Knox County about the middle of October, 1964, where he found a telephone, which was made an exhibit to his testimony. He testified that he tagged the telephone and took it to the County Jail where it remained until Mr. Swift inspected it and then it remained in his custody until the date of the trial.

It is the contention of Van Zandt here that the statement taken from him by Swift was in violation of his constitutional rights and, therefore, should have been excluded on two grounds; first, the State failed to provide the defendant with counsel prior to his confession, and, second, the defendant was denied his right to be taken before a magistrate promptly upon arrest.

The record shows that this statement was not taken by the State, or any agency thereof, but was taken by an employee of the telephone company. The evidence shows that Van Zandt had been in jail for about three days prior to giving this written statement to Mr. Swift. During this interval the Sheriff had questioned him on several

occasions, but there is no claim of any harsh or coercive treatment on the part of the Sheriff, and, as a matter of fact, since he did not confess to the Sheriff and his confession is not before the Court through the testimony of the Sheriff, we do not see how there can be any justifiable complaint against the Sheriff or any of his activity in connection with this case.

Van Zandt did say that he told the Sheriff on several occasions that he would like to have a lawyer and when asked what reply the Sheriff made to this request, he said:

A. Well, he told me if I knew one I could call, which I didn't, I could call one, but I didn't call, he told me I could call my people, so I did that.

Q. Did you tell him anything about your financial condition?

A. Yes, sir.

Q. Did you tell him anything about your financial situation relative to your ability to hire a lawyer?

A. Well, I mentioned that my mother would not be able to hire a lawyer because she was sending my brother and sister both to school, and that I wouldn't have any way to get one.

Q. All right, so then were you interrogated by any other officer while you were out there?

A. That day?

Q. That day or following that?

A. Twice that day the Sheriff questioned me, in the morning and in the evening.

Q. All right, did the Sheriff question you about one, just one or several breakins or burglaries?

A. He questioned me on several, I mean on three days.

Q. Did the Sheriff say anything to you by way of inducement or threat to get you to make any statement?

A. He told me, he stated that he would help me in any way possible if I would help him, that's the way he put it, he said he would help me.

However, as said above, Van Zandt did not confess to the Sheriff and, therefore, he has no justifiable complaint that his constitutional rights were in any way infringed upon by the Sheriff.

According to the undisputed testimony of Mr. Swift, the defendant was advised of his right to remain silent.

A. I told him that he did not have to talk to me, that he could remain silent, that the statement he was about to make with me could be used as evidence in a court of law, and this is in essence what I told him.

The Court: Did he at any time demand an attorney?

A. No sir.

According to Van Zandt it was about two weeks after his arrest before he was taken before a magistrate.

In Case No. 55, Mr. Clarence Swift attempted to prove by records in the office of the telephone company, such records not having been made by him or in his official custody, that the coin telephone which was given as having been found in Loudon Lake by a Knox County Sheriff Officer, was the same as that which the telephone company placed in the Manor Apartments where the defendant confessed to having stolen a telephone. The numbers on the cash box of the found telephone matched the numbers

listed in the company records showing a telephone with that number in the Manor Apartments.

In the second case, that is No. 58, involving a different location, 224 State Street, Knoxville, a Mr. David Queenan, Public Telephone Supervisor of the telephone company and custodian of the records of pay telephones, identified from his records the stolen telephone from 224 State Street. Neither Mr. Swift nor Mr. Queenan had gone to the scene of either crime.

In the cases at bar, there is no doubt that Van Zandt knew of his right to remain silent since it is undisputed that Mr. Swift, the investigator for the telephone company, so advised him.

In *Steel v. State,* 189 Tenn. 424, 225 S.W.2d 260 (1949), it was held, *inter alia,* that a trial court is not obligated to appoint counsel for defendant prior to indictment or arraignment, because prior to that time there is no formal charge against him and, therefore, failure to appoint counsel does not vitiate a confession, but this case may have lost some of its vitality in a few of the late decisions of this Court and of the United States Supreme Court. However, in *Hickson v. State,* 196 Tenn. 659, 270 S.W.2d 313 (1954), a confession to an assistant district attorney was not inadmissible under T.C.A. sec. 40-1101 because of failure of the assistant district attorney to advise the defendant of his constitutional rights, the duty under the statute being upon the committing magistrate. The Court recognized, however, that if the question of voluntariness of the confession had arisen, it might have held differently. The cases before us are not those in which a magistrate failed to advise of right to counsel.

■ The true test, it seems to us, is whether "fundamental fairness" and "substantial justice" which, after all, are what is meant by "due process of law," under the Fourteenth Amendment, are absent or present.

In the cases before us the plaintiff in error was told that he did not have to talk to Swift; that he could remain silent, and that any statement he made could be used as evidence in a court of law; and, further, that Van Zandt did not at any time make a demand for an attorney to Swift.

■ Considering the whole of the testimony as to the admissibility of the statement made to Mr. Swift, the court admitted it into evidence and from our examination of the record we cannot say that the court abused its discretion or that the preponderance of the evidence is against the action of the trial court.

In the recent case of *Beaver v. State,* 217 Tenn.. 447, 398 S.W.2d 261, released January 5, 1966, the Court, in an opinion by Mr. Justice Chattin, held it not error to fail to advise a defendant of his right to counsel before he gave a confession, where it was shown that he had been advised of his right to remain silent. In that case the defendant told officers that he "had been in court before and knew his rights."

In *Harris v. State,* 217 Tenn. 582, 399 S.W.2d 749, released on the same day, in an opinion by Mr. Chief Justice Burnett, the defendant there was advised of his right to remain silent, but not of his right to counsel. We held there was no error in this case because voluntariness is the ultimate test of admissibility of a confession. Van Zandt certainly voluntarily and over the injunction of Swift that he could remain silent if he so desired, and

that any testimony given by him could be used against him in a court of law, gave a statement to Swift which was admitted into evidence on the trial of these cases.

The holding in both of these cases was based partially, if not primarily, on the fact that the defendant knew of his right to remain silent and, of course, in the present cases the plaintiff in error was advised positively of his right to remain silent.

We also observe from the record in these cases that Van Zandt knew of his right to counsel since he said he wanted a lawyer when the Sheriff was questioning him, but when Swift questioned him he made no such demand, although Swift did testify that Van Zandt was advised of his right to remain silent.

It is the obligation of a magistrate, under T.C.A. sec. 40-1101, to advise one charged with having committed a public offense of the offense with which he is charged, and of his right to aid of counsel in every stage of the proceeding. T.C.A. sec. 40-1102 provides that the magistrate shall allow the defendant a reasonable time to send for counsel, and, if necessary, shall adjourn the examination for that purpose.

These are obligations placed upon the magistrate by statute and not upon law enforcement officials.

In *Giles v. State,* 185 Tenn. 429, 206 S.W.2d 412 (1947), it was held that the statements made in answer to questions of a magistrate before whom an accused was brought immediately after arrest were inadmissible where the magistrate failed to advise him of his right to counsel, or his right to remain silent. A reversal of a conviction was ordered in *Polk v. State,* 170 Tenn. 270,

94 S.W.2d 394 (1936), on essentially the same set of facts, even though a sheriff had advised the accused that his statements might be used against him. As set out above, this statute places the duty upon the magistrate and not upon any other officials of the State.

The plaintiff in error contends that his constitutional rights were violated because he was held for about two weeks before being taken before a magistrate. Plaintiff in error relies upon three cases decided by the Supreme Court of the United States, as holding that statements made by one held for an unusual length of time are not admissible in evidence. An examination of these cases will show that the holding was not meant to vitiate a confession simply because it was obtained during a lengthy and illegal detention. In *Watts v. State of Indiana,* 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801, (1949); *Turner v. Com. of Pennsylvania,* 338 U.S. 62, 69 S.Ct. 1352, 93 L.Ed. 1810, 1811 (1949); and *Harris v. State of South Carolina,* 338 U.S. 68, 69 S.Ct. 1354, 93 L.Ed. 1815 (1949), it was held that the detention of the accused for a long time before taking him to a magistrate, in *violation* of State law, was only one of many factors making up a picture of relentless police pressure on the accused, making his confession involuntary. Some of the other factors present were relentless questioning, holding accused incommunicado for a long time, and failure to advise him of his constitutional rights. None of these factors were responsible in any way for the confession of the plaintiff in error here. Tennessee does not have a statute requiring immediate or prompt arraignment, but under T.C.A. sec. 40-604 it is provided that

\* \* \* no person can be committed to prison for any criminal matter, until examination thereof be first had before some magistrate.

In the recent case of *Hardin v. State,* 210 Tenn. 116, 355 S.W.2d 105, 356 S.W.2d 595 (1962), it was held that said section aforesaid did not prohibit the holding of an accused for questioning before taking him to a committing magistrate or arraignment. It was not indicated in that opinion, however, just how long the defendant was detained. A holding of two days, nothing else appearing, does not violate due process or sec. 40-604. *Dupes v. State,* 209 Tenn. 506, 354 S.W.2d 453 (1962); *East v. State,* 197 Tenn. 644, 277 S.W.2d 361 (1955).

In the instant case, the confession was taken three days after the arrest and the holding for two weeks thereafter apparently had no bearing on the voluntariness of the defendant's statements. In other words, he was not held until he confessed. Just why he remained in jail so long is not definitely shown by the record, but it could have been for any number of valid reasons.

In *Tines v. State,* 203 Tenn. 612, 315 S.W.2d 111 (1958), the Court stated that delay for about a week before the prisoner was taken before a magistrate was not had for the purpose of extracting a confession, since the confession was taken a day after the crime was committed. Again, in *Wynn v. State,* 181 Tenn. 325, 181 S.W.2d 332 (1944), it was held that detention for seventy-two hours, in and of itself, without mistreatment, is not sufficient to render a confession taken during that time inadmissible.

At any rate, there is nothing in this case to show that the detention in jail had any bearing at all on the confession made by the defendant to Swift.

■ It is claimed in the assignments here that the corpus delicti was not proved in these cases. Corpus delicti is the body of the crime—evidence that a crime was committed at the place alleged in the indictment. In these cases the State attempted to prove the corpus delicti in this manner: each pay telephone is identified by a number, among other things a number on the cash box of the telephone. The identifying number and the location of the telephone bearing those numbers is of record in the office of the Public Telephones Supervisor of the telephone company for the particular geographical area involved. In the first case, Case No. 55, the State sought successfully to introduce a key "record" from the company showing that a telephone bearing certain identifying numbers was supposed to be located in the Manor Apartments in Knoxville, where a telephone had been ripped off the wall. The key number matched that of a telephone found by the police in Loudon Lake, which telephone was later made an exhibit in this case. The key of this telephone was introduced by Clarence Swift, who, it is claimed by the plaintiff in error, was not competent to testify about it. Thus, it is said that since the "records" of the company were not properly introduced the corpus delicti was not proved.

Plaintiff in error relies on T.C.A. sec. 24-714, the "Uniform Business Records as Evidence Act," contending that since Swift was not the custodian of the records and was not an "other qualified witness" under the Act, and since he had no standing to testify under the common law because he did not prepare the records, he could not introduce the key that identified the stolen telephone.

In Case No. 58 the custodian of these records, a Mr. Queenan, testified as to them so there can be no error

here. It is only Case No. 55 with which we must be concerned.

The issue is whether Swift, a Security Supervisor for the telephone company, though not technically the custodian of these records, was an "other qualified witness" within the meaning of T.C.A. sec. 24-714. Some authority construing the "Uniform Business Records as Evidence Act" shows that appellate courts most often leave this up to the discretion of the trial judge.

In *Cantrill v. American Mail Line, Inc.*, 42 Wash.2d 590, 257 P.2d 179 (1953), while noting that the person in whose custody certain hospital records were kept is the proper witness to introduce them, the court also said that:

The ruling of the trial judge admitting or excluding such records is given much weight and will not be reversed unless there has been a manifest abuse of discretion.

In *Allen v. St. Louis Public Service Co.*, 365 Mo. 677, 285 S.W.2d 663, 666, 55 A.L.R.2d 1022 (1956), the court said:

There must, of course, be a preliminary showing of the identity of the record, the mode and time (or times) of its preparation, and that it was made in the regular course of business; if this, and the "sources of information," are sufficient "in the opinion of the court," then the record, generally, is admissible.

█ In examining the bill of exceptions in Case No. 55, at pages 24-26, we find that the witness Swift did not know the location of the telephone in question in the Manor Apartments. As a matter of fact, he said he did

not go in there and when asked by the court: "But have you seen it?", he answered: "No, I haven't." The court then properly ruled: "Then you can't answer that question."

Mr. Swift did have a key with a number on it that matched the number on the cash box of the telephone which was then in evidence in court, but there is no evidence in the record that this telephone was ever in the Manor Apartments, and, as a matter of fact, the court said: "This witness wouldn't know." That is, whether or not the telephone was ever in or had been taken from the Manor Apartments. No person testified that the telephone was ever in the apartments.

In response to objection to the introduction of testimony of Swift in connection with the location of the telephone, the court said:

But, this witness can't testify to all the facts. We can let someone else come in, but if it isn't connected, then it will be excluded. You don't need to worry about that.

On cross-examination Mr. Swift was asked whether he could swear that the telephone in question was ever in the Manor Apartments and his reply was: "Only based on the records." He was then asked:

Q. And you are not the custodian of those records?

A. No, but they are passed to me.

Q. Somebody else makes them up and they go in some place and come through a series of hands?

A. Yes, this is true.

Q. So you don't know of your own knowledge whether there was a telephone in there ever [the Manor Apartments]?

A. No, I couldn't say, I never saw it.

T.C.A. sec. 24-714 provides that the record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified person, testifies to its identity and the mode of its own preparation, etc.

█ Mr. Smith was not the custodian of the records and there was no effort made to show that he was an "other qualified witness" as required by the Act. He was merely a Security Supervisor and he seemed to have no more knowledge of the records of the telephone company than any one else. He merely had a key in his hand with a number on it and that key fit the telephone which was admitted into evidence. Where the telephone had been or where it came from, other than the lake, was not shown in the record by evidence sufficient to convict this defendant. As a matter of fact, any person possessing the key could have opened the cash box of the telephone and testified to the same state of facts as did Mr. Swift in regard to the ownership, location, etc., of the telephone. In other words, he had no peculiar or distinctive knowledge which could in anywise qualify him as a witness within the meaning of said section. With this evidence out of the record we do not feel that the State proved the corpus delicti in Case No. 55.

█ In Case No. 58 Mr. Queenan appeared and testified that he served as Public Telephones Supervisor of Southern Bell Telephone & Telegraph Company for Tennessee, and in this capacity he had custody of all records, keys,

and receptacles in Tennessee and was responsible for collection, counting and depositing of coin telephone money in Tennessee.

He testified from the books and records brought with him into court that there was a pay telephone at 224 State Street in Knoxville, in September, 1964, and that according to his records this particular telephone, for calling purposes, bore the number 524-9945, and was located in the Monday Apartments. He had with him the key number on this telephone which was F-53529 and he also had with him the key number on a ring which was exactly the same, F-53529, and with this key he opened the cash box on the telephone.

We think that Mr. Queenan's testimony was relevant and competent under T.C.A. sec. 24-714 as well as under the common law.

For the foregoing reasons, it results that Case No. 55, in which the plaintiff in error was given a sentence of six months to be served in the Knox County Workhouse is reversed and remanded for a new trial and that Case No. 58, in which the plaintiff in error was sentenced to serve eleven months and twenty-nine days in the Knox County Workhouse is affirmed. An order will be entered accordingly.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.

## On Petition to Rehear

MR. JUSTICE WHITE.

Plaintiff in error has filed a respectful petition to rehear which has been answered ably by the State. He is

particularly aggrieved by the admission of the confession in view of the fact that he requested an attorney from the sheriff, but that later, when he confessed to the telephone company agent, no attorney was present to counsel him.

■ Counsel for plaintiff in error cites the case of *United States ex rel, Russo v. State of New Jersey,* 351 F.2d 429 (3d Cir. 1965), for the proposition that where an accused is not allowed access to an attorney when giving a confession, regardless of any lack of coercion, the confession is inadmissible at trial. That case was based, of course, on the holding in *Escobedo v. State of Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), under the *circumstances of Escobedo.* In both *Escobedo* and *Russo,* there is a clear implication, if not a direct conclusion, that the accused was denied his constitutional rights. In the case at bar, petitioner was specifically warned that anything he said might be used against him and that he did not have to make a statement. We, therefore, feel that these cases are patently distinguishable from the instant case.

Counsel's new argument that the telephone company agent is also an agent of the State for purposes of the Fourteenth Amendment is, therefore, academic in view of our decision herein. Petition to rehear is denied.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.