FILED
02/16/2018
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
December 19, 2017 Session

## STATE OF TENNESSEE v. DURAN MASZAE LEE

Appeal from the Criminal Court for Anderson County
No. B2C00544    Donald R. Elledge, Judge

_____

No. E2017-00368-CCA-R3-CD
_____

The Defendant, Duran Maszae Lee, was convicted by an Anderson County Criminal Court jury of possession with the intent to sell or to deliver more than 0.5 gram of cocaine, a Class B felony. *See* T.C.A. § 39-17-417(a)(4) (2010) (amended 2012, 2014). The trial court sentenced the Defendant as a Range II, multiple offender to sixteen years' confinement. On appeal, the Defendant contends that (1) the evidence is insufficient to support his conviction, (2) that the indictment is duplicitous, and (3) the trial court erred by failing to exclude his pretrial statements to the police. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Robert L. Jolley, Jr. (on appeal, at sentencing, and at motion for new trial hearing) and Megan A. Swain (on appeal), Knoxville, Tennessee, and Brennan Lenihan (at trial), Clinton, Tennessee, for the appellant, Duran Maszae Lee.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Dave S. Clark, District Attorney General; and Anthony Craighead, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the seizure of cocaine during a vehicle search after the police received a report of an unrelated shooting in Clinton, Tennessee. At the trial, Oak Ridge Police Detective John Criswell testified that on April 27, 2012, the police dispatcher provided him with information about a possible shooting involving a gray-colored, four-door Kia sedan. Detective Criswell responded to the area of the shooting at approximately 1:00 p.m. and searched for the car. He said that he saw a car matching the description, that the car

was parked in the front yard of a home, and that he and additional police officers approached the car. Detective Criswell said that, without opening the car doors, he examined the car for bullet holes, cartridge casings, firearms, and injured persons. He said that he saw what he believed was cocaine wrapped in cellophane in the driver's side door handle.

Detective Criswell testified that as he saw the off-white, rock-like substance in the cellophane, the woman who rented the home arrived. He said that the woman gave him permission to search the car, that he obtained the substance wrapped in cellophane, and that the Defendant came out of the home. Photographs of the car and of the substance wrapped in the cellophane were received as exhibits. Detective Criswell said a field test showed that the substance weighed approximately 2.4 grams and contained cocaine.

Detective Criswell testified that the Defendant asked to speak to Captain Mike Uher, who was at the scene. Detective Criswell said that the Defendant admitted driving the car and owning the cocaine. Detective Criswell said that the Defendant also admitted he "sold drugs for a living" because he was unemployed. Detective Criswell overheard the Defendant state that the amount of cocaine inside the car was not "enough to send a man to the pen" because it only weighed 2.4 grams.

Detective Criswell testified that he, Sergeant Hill, and Officer Freytag searched the home and that $825 cash and digital scales were found inside a bedroom. A photograph of the money and scales was received as an exhibit. Detective Criswell said that the Defendant was adamant that the cocaine belonged to him.

On cross-examination, Detective Criswell testified that ten officers responded to the shots-fired call, that the car in which the cocaine was found matched the description of a car involved in the shooting, and that he did not find any guns, bullet holes, or cartridge casings inside the car. He agreed that the search of the home and the car could have occurred simultaneously and said that his focus was the car. He agreed that Captain Uher told the Defendant "something to the effect" that the woman who rented the home and the car would go to jail if the Defendant did not admit the cocaine belonged to him.

Detective Criswell testified that based upon some of the items he saw inside the bedroom where the money and digital scales were found, he believed a woman slept in the bedroom. Detective Criswell agreed that he never saw the Defendant inside the bedroom. He agreed that he never saw the Defendant inside the car and that the Defendant did not have any money or drugs on his person. Detective Criswell said that the Defendant did not possess keys to the car or to the home.

Oak Ridge Police Captain Mike Uher testified that he responded to the scene, that he saw the car, that numerous police officers responded, that he saw what he thought was crack

cocaine in the door handle of the car, and that the Defendant stood at the doorway of the home talking to Detective Criswell. Captain Uher said that the Defendant requested to speak with him and that the Defendant stated the car belonged to his girlfriend, that he had driven the car, and that the drugs did not belong to his girlfriend. Captain Uher said that the Defendant was not worried about going to prison because the Defendant believed the amount of cocaine found inside the car was small. Captain Uher said that the Defendant denied having lawful employment and that the Defendant admitted selling drugs for income. Captain Uher said his conversation with the Defendant was normal without contention.

On cross-examination, Captain Uher testified that when he arrived at the scene, Detective Criswell told him that the Defendant was in police custody and had been read his *Miranda* rights. Captain Uher said he did not participate in the search of the car or the home. Captain Uher denied telling the Defendant that his girlfriend would go to jail if the Defendant did not admit possessing the drugs. Captain Uher said that he asked the Defendant if the drugs belonged to the Defendant or to the Defendant's girlfriend and that the Defendant admitted the drugs belonged to him and stated the weight.

Retired Tennessee Bureau of Investigation (TBI) forensic drug chemist David Holloway testified that he analyzed the evidence in this case. He concluded that the substance removed from the car was cocaine base and weighed 1.96 grams.

Oak Ridge Police Officer Daniel Freytag testified that Detective Criswell arrived at the scene first, that they examined the car because they thought it might have been involved in a shooting, and that they saw a plastic bag inside the car near the driver's side door handle. Officer Freytag said that the bag contained an off-white substance he believed was cocaine.

Officer Freytag testified that he participated in the search of the home and that he found cash and digital scales inside a bedroom. He said he notified Detective Criswell, who took photographs of the items.

On cross-examination, Officer Freytag testified that he and Detective Criswell initially examined the car's exterior and that nobody entered the car until they saw what they thought was cocaine inside the car. He said he did not participate in the search of the car. He said that he and two additional officers entered the home to ensure nobody was inside. He did not recall whether female clothes were inside the bedroom in which the money and the digital scales were found.

Upon this evidence, the Defendant was convicted of possession with the intent to sell or to deliver more than 0.5 gram of cocaine. The trial court sentenced him to sixteen years' confinement. This appeal followed.

**I.     Sufficiency of the Evidence**

The Defendant contends that the evidence is insufficient to support his conviction. He argues that his inculpatory statements were the result of Captain Uher's ultimatum, rendering his statements involuntary and untrustworthy, and that the State failed to corroborate his statements. The State responds that the evidence is sufficient to support the conviction. We agree with the State.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see also State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

However, "a conviction cannot be based solely on a defendant's confession and, therefore, . . . the State must present some corroborating evidence to establish the corpus delicti[.]" *State v. Banks*, 271 S.W.3d 90, 140 (Tenn. 2008) (citing *State v. Smith*, 24 S.W.3d 274, 281 (Tenn. 2000)). "Corpus delicti is the body of the crime - evidence that a crime was committed at the place alleged in the indictment." *Van Zandt v. State*, 402 S.W.2d 130, 136 (Tenn. 1996). "A confession may sustain a conviction where there is other evidence sufficient to show the commission of the crime by someone." *Taylor v. State*, 479 S.W.2d 659, 661-62 (Tenn. Crim. App. 1972).

Recently, our supreme court clarified the corroboration requirement in *State v. Bishop*, 431 S.W.3d 22 (Tenn. 2014). Pursuant to the modified trustworthiness standard, "a defendant's extrajudicial confession is sufficient to support a conviction only if the State introduces 'independent proof of facts and circumstances which strengthen or bolster the

confession and tend to generate a belief in its trustworthiness, plus independent proof of loss or injury.'" *Id*. at 58 (quoting *State v. Lucas*, 152 S.2d 50, 60 (N.J. 1959)). In other words, if the offense involves tangible injury, the prosecution "must provide substantial independent evidence tending to show that the defendant's statement is trustworthy, plus independent prima facie evidence that the injury actually occurred." *Id*. at 59. If, however, the offense does not involve a tangible injury, the prosecution "must provide substantial independent evidence tending to show that the defendant's statement is trustworthy, and the evidence must link the defendant to the crime." *Id*. The court noted that offenses that do not involve a tangible injury "may include inchoate crimes, certain financial crimes, status crimes, and sex offenses lacking physical evidence and a victim who can testify." *Id*. at n.28. The substantial independent evidence "must corroborate essential facts contained in the defendant's statement," regardless of whether a tangible injury occurred, and evidence corroborating "collateral circumstances surrounding the confession will not suffice to establish trustworthiness." *Id.* at 59-60.

It is a crime to "[p]ossess a controlled substance with intent to . . . deliver or sell [a] controlled substance." T.C.A. § 39-17-417(a)(4). Delivery is defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." *Id*. § 39-17-402(6) (2014). A sale is "a bargained-for offer and acceptance, and an actual or constructive transfer or delivery" of a controlled substance. *State v. Holston*, 94 S.W.3d 507, 510 (Tenn. Crim. App. 2002). Possession of cocaine with the intent to sell or to deliver is a Class B felony "if the amount involved is point five (0.5) gram[] or more[.]" T.C.A. § 39-17-417(c)(1) (2010) (amended 2012, 2014).

In the light most favorable to the State, the evidence reflects that the police responded to an unrelated shots-fired call and located a car matching the description of a vehicle possibly involved in the shooting. Without entering the car, police officers examined the car, and in plain view, they saw an off-white, rock-like substance wrapped in cellophane in the driver's door. The officers believed the substance was cocaine. The car was parked in front of a home rented by the Defendant's girlfriend, who arrived after the officers saw the substance. The Defendant's girlfriend also rented the car and gave the officers consent to search the car. On his own accord, the Defendant left the home and asked to speak with Captain Uher. During their conversation, the Defendant admitted the drugs belong to him, admitted he sold drugs for income because he was unemployed, admitted driving the car, and stated that the drugs weighed approximately 2.4 grams. The substance tested positive for cocaine at the scene and weighed approximately 2.4 grams, the same amount reported by the Defendant. The TBI analysis later showed the substance contained cocaine base and weighed 1.9 grams. The Defendant emerged from the home in which digital scales and $825 cash were found.

Contrary to the Defendant's assertion that his admission to possessing the drugs is the only evidence supporting his conviction, sufficient and substantial additional evidence reflects that a jury could have determined beyond a reasonable doubt that the Defendant possessed cocaine with the intent to sell or to deliver it. The Defendant knew the weight of the cocaine and was seen leaving a home from which digital scales and a large amount of money were recovered. The money and scales found inside the home supported the Defendant's admissions that he sold drugs for income and that he knew the weight of the cocaine recovered from the car parked outside the home. As a result, the evidence is sufficient to support the Defendant's conviction, and he is not entitled to relief on this basis.

## II.    Defective Indictment

The Defendant contends that the indictment count charging possession with the intent to sell a controlled substance and possession with the intent to deliver a controlled substance is duplicitous and is, therefore, defective. He argues that the indictment count alleged two intent elements, namely the intent to sell and the intent to deliver, and that as a result, possession with the intent to sell and to deliver are separate and distinct offenses. He asserts that the State should have been required to elect between possession with the intent to sell and possession with the intent to deliver in order to ensure a unanimous jury verdict. The State responds that the Defendant has waived appellate review of this issue because he failed to challenge the validity of the indictment in the trial court. Alternatively, the State argues that the jury considered only one offense and that jury unanimity concerns were not implicated.

"[A]ll crimes arising from the same incident that are not lesser included offenses of another crime charged in the indictment must be charged in separate counts." *State v. Gilliam*, 901 S.W.2d 385, 389 (Tenn. Crim. App. 1995); *see State v. Angela E. Isabell*, No. M2002-00584-CCA-R3-CD (Tenn. Crim. App. June 27, 2003). The prohibition against duplicitous indictments is to ensure a defendant is provided adequate notice of the allegations, to prevent a violation of double jeopardy principles, and to ensure a unanimous jury verdict. *State v. Michael Burnette*, No. E2005-00002-CCA-R3-CD, 2006 WL 721306, at *3 (Tenn. Crim. App. Mar. 26, 2006), *perm. app. denied* (Tenn. Sept. 5, 2006). However, Tennessee Rule of Criminal Procedure 12(b)(2)(A) requires a defendant to file a motion alleging non-jurisdictional indictment defects, including duplicity, before the trial, and this court has concluded that failure to allege a duplicitous indictment before the trial results in waiver of appellate review. *See Michael Burnette*, 2006 WL 721306, at *3; *State v. Donald Richardson*, No. 87-192-III, 1988 WL 52670, at *1 (Tenn. Crim. App. May 24, 1988).

The record reflects that the Defendant did not file a pretrial motion alleging a duplicitous indictment. We note that appellate counsel conceded at oral argument that trial counsel did not raise this issue before the trial. The record shows that the Defendant first

-6-

alleged duplicity in his motion for a new trial. As a result, the Defendant has waived consideration of this issue, and we decline to review it for plain error. The Defendant is not entitled to relief on this basis.

### III. The Defendant's Pretrial Statements

The Defendant contends that the trial court erred by failing to exclude from the trial his incriminating statements at the time of his arrest. He argues that his statements to Captain Uher were made after an unconstitutional search and seizure of the car, leading to the discovery of the cocaine, and that his statements were involuntary because he was subjected to police coercion and threats. The State responds that the Defendant has waived consideration of this issue because he failed to challenge the admissibility of his pretrial statements on this basis in the trial court. We agree with the State.

The record reflects that on August 15, 2013, the Defendant filed a motion to suppress his pretrial statements. The motion sought to exclude generally, the Defendant's statements to law enforcement officers and to exclude any statement the State intended to offer as admissible hearsay and non-hearsay. The motion alleged that the admission of the Defendant's statement "would violate[] the Defendant's rights of confrontation guaranteed by the Tennessee and United States Constitutions." The motion did not allege that the Defendant's statements were the result of coercion or threats by the police. Furthermore, the transcript from the motion hearing and an order from the trial court on the motion are not included in the appellate record.

In his motion for a new trial, the Defendant alleged that the trial court erred by "allowing the testimony regarding any statement of [the Defendant] that was the fruit of his unconstitutional search and seizure." At the motion hearing, the defense alleged that the search of the car was unconstitutional and that as a result, the Defendant was entitled to a new trial. In response, the State argued that the Defendant did not own the car and did not have standing to challenge the search. The prosecutor noted that the defense's position at the trial was that drugs did not belong to the Defendant because the car did not belong to him. In response, the defense noted the discrepancy in the testimony of Detective Criswell and Captain Uher relative to whether Captain Uher told the Defendant that unless the Defendant took responsibility for the drugs, his girlfriend would go to jail. The defense argued that this "circumstance" needed to be considered "when you're talking about somebody[] else's car, potentially somebody else's dope and statements that were made in response to a threat that that individual whose car it was where the dope was found would be going to jail unless he took responsibility for it."

Although the Defendant filed a motion to suppress his statements to the police, he argues for the first time on appeal that his statements should have been suppressed because

of police coercion. Tennessee Rule of Criminal Procedure 12(b)(2)(C) states that a motion to suppress evidence must be raised before a trial. All of the Defendant's contentions relative to the admissibility of his pretrial statements should have been raised in the motion to suppress he filed before the trial. *See State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996) (stating "[i]ssues raised for the first time on appeal are considered waived"); *see also* T.R.A.P. 36(a) (stating that "relief may not be granted in contravention of the province of the trier of fact" and that "[n]othing in this rule shall be construed as requiring relief be granted to a party . . . who failed to take whatever action was reasonably available to prevent . . . the harmful effect of an error"). Furthermore, the issue was not raised in the motion for a new trial. *See* T.R.A.P. 3(e) (stating "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission . . . of evidence, . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived"). Although the defense referenced the alleged coercion at the motion for a new trial hearing, the transcript reflects that the defense argued his statements were the result of an unconstitutional search and seizure. As a result, the Defendant has waived consideration of this issue, and we decline to review it for plain error. The Defendant is not entitled to relief on this basis.

The judgment of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE