IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs September 26, 2018

**STATE OF TENNESSEE v. TYWAN MONTREASE SYKES**

**Appeal from the Circuit Court for Blount County**
**No. C-24431 David Reed Duggan, Judge**

_____

**No. E2017-02300-CCA-R3-CD**

_____

Defendant, Tywan Montrease Sykes, was convicted by a Blount County jury of a violation of the sex offender registry, for which he received a sentence of two years' incarceration. On appeal, Defendant argues that the evidence presented at trial was insufficient to support his conviction because the State failed to prove that he established a secondary residence under Tennessee Code Annotated section 40-39-208. Defendant further contends that there was insufficient evidence to corroborate his statements to investigators and establish the "body of the crime," or corpus delicti. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Ryan Goddard, Maryville, Tennessee, for the appellant, Tywan Montrease Sykes.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Mike L. Flynn, District Attorney General; and Ashley Salem, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

In October 2016, the Blount County Grand Jury indicted Defendant, as follows: [1]

_____

[1] Defendant was indicted for a second count of violation of the sex offender registry, but the State entered a nolle prosequi as to that count before trial.

THE GRAND JURORS of Blount County, Tennessee, duly impaneled and sworn, upon their oath, present that:

TYWAN MONTREASE SYKES

who is a "sexual offender" as that term is defined by Tennessee Code Annotated §40-39-202, on or about the 25th day of March, 2016, in Blount County, Tennessee and before the finding of this indictment, unlawfully and knowingly did fail to disclose to Law Enforcement Agency (vacated primary residence without informing of secondary residence within 48 hours) as required by Tennessee Code Annotated §§40-39-203 and 40-39-204 in violation of Tennessee Code Annotated §40-39-208, and against the peace and dignity of the State of Tennessee.

At trial, Investigator Janice Postel of the Blount County Sheriff's Office testified that, in September 2016, she supervised individuals on the sex offender registry. Investigator Postel explained that she kept the sex offender registry's computer database current with demographics "of where [sex offenders] live[d], where they work[ed], what they [] look[ed] like, what vehicles they dr[o]ve." Investigator Postel testified that Defendant was placed on the sex offender registry based on his conviction for aggravated statutory rape in 2012. Investigator Postel recalled that she conducted an initial registration of Defendant on September 20, 2012, while Defendant was incarcerated in the Blount County Jail. She met with Defendant on that day and provided him with information about the sex offender registry, including a copy of the registry's rules. Investigator Postel met with Defendant again on October 9, 2015, after his release from custody. On that day, Investigator Postel went over the Tennessee Sexual Offender Registration/Verification/Tracking form ("the sex offender registration form") with Defendant. In Section A of the sex offender registration form, Defendant listed his name, date of birth, social security number, aliases, city and state of birth, driver's license number, his TOMIS identification number, and his physical features. For Section B of the sex offender registration form, Defendant provided his primary address, which he listed as 184 Seals Crossing Way in Maryville. Investigator Postel explained to Defendant that he needed to disclose any secondary addresses, and she detailed what qualified as a secondary address. However, Defendant denied having a secondary address. Investigator Postel testified that she went through the sex offender registration form "line by line" with Defendant to make sure that he understood the requirements of the sex offender registry, including the requirement that he report within forty-eight hours of changing or establishing a primary or secondary address. Defendant signed an acknowledgment that the requirements had been fully explained to him and that he understood the requirements.

Investigator Postel testified that Defendant met with another investigator from the Blount County Sheriff's Office at the end of February 2016. Defendant provided what he purported to be updated information for the sex offender registry; however, the information he provided was identical to his initial registration and reflected no changes to his primary address. Defendant did not report a secondary address at that time. Investigator Postel attempted to make contact with Defendant via telephone on several occasions but was only able to exchange voicemail messages with him. In her voicemail messages, Investigator Postel told Defendant that "if he was going to stay someplace other than his own home that within 48 hours he had to let [her] know where he was []." After these unsuccessful attempts, she began searching for Defendant on March 19, 2016. Investigator Postel enlisted the help of fellow Blount County officers, the Alcoa Police Department, and the U.S. Marshals Service to find Defendant. Investigator Postel testified that she searched for Defendant from March 19, 2016 to April 5, 2016, when the U.S. Marshals Service arrested Defendant at Amanda Harris' home on 1352 Maple Lane in Greenback. At the time of his arrest, Defendant told Investigator Postel that he had gone to visit his mother in Mississippi and that he had been staying at the Maple Lane residence "as well during that time." Investigator Postel testified that Defendant never informed her that he was leaving the state, and he never reported his mother's address in Mississippi as a secondary address. Defendant admitted that "he had been gone approximately a week." Defendant admitted that he stayed at his mother's address for "about seven days"; he left "the Friday before April 1"[2] and returned to Tennessee on April 1.

Detective Shannon Carswell with the Blount County Sheriff's Office testified that she assisted in the search for Defendant. On March 19, 2016, she issued a BOLO alert for Defendant and went to Defendant's primary residence on Seals Crossing. She arrived at the residence around 9:30 a.m., but Defendant was not there. Detective Carswell returned to the Seals Crossing residence on the evenings of March 23, 2016, and March 28, 2016, but was unable to locate Defendant. Detective Carswell also attempted to locate Defendant at his place of employment—the IHOP in Maryville—without success. She stated that she looked for Defendant from March 19, 2016, until April 5, 2016, when Defendant was arrested.

Amanda Harris testified that she was engaged in a sexual relationship with Defendant during March and April 2016 when she lived on Maple Lane in Greenback. Ms. Harris stated that Defendant came over "a handful of times and maybe spent two nights with me, maybe." She stated that Defendant spent one night at her residence in March 2016 and one night at the end of February 2016. Ms. Harris said that she received

---

[2] The court takes judicial notice that, in 2016, the Friday before April 1 was March 25, 2016.

several phone calls from Defendant in April 2016. During one call, Defendant asked her to pick him up at a bus station in Nashville, and Defendant was at her Maple Lane residence on the morning of April 5, 2016, when Defendant was arrested. Ms. Harris stated that she picked up Defendant in Nashville at the Greyhound Bus Station two or three days before he was arrested.

After his arrest, Defendant remained in contact with Ms. Harris. During one telephone call from the Blount County Jail, Defendant told Ms. Harris, "They knew everything. They knew about me going to Mississippi . . . I don't know how they knew, or whatever, but they knew."[3]

Defendant offered no evidence on his behalf. Following deliberations, the jury found Defendant guilty of a violation of the sex offender registry. The trial court sentenced Defendant, as a Range I standard offender, to two years to serve in the Tennessee Department of Correction. This timely appeal follows.[4]

## Analysis

On appeal, Defendant contends that the State presented insufficient evidence to convict him of a violation of the sex offender registry based on his failure to disclose within 48 hours that he was maintaining a secondary residence, as required by Tennessee Code Annotated §§40-39-203 and 40-39-204. He argues that the State offered no evidence other than his own statements to establish that he had been at a location other than his primary residence for four or more consecutive or nonconsecutive days in any month and that there was no direct or circumstantial evidence provided to corroborate that Defendant had been in Mississippi, in contravention of the doctrine of corpus delicti. The State responds that the evidence was sufficient to sustain Defendant's conviction for a violation of the sex offender registry and that Defendant's confession was sufficiently corroborated. We agree with the State.

### *Sufficiency of the evidence*

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This

---

[3] The State introduced as an exhibit a jail recording of Defendant's telephone call to Ms. Harris.

[4] It does not appear from the record that Defendant filed a motion for new trial.

court will not reweigh the evidence. *Id*. Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007).

Defendant was convicted of a violation of the sex offender registry requirements by knowingly failing to report a secondary residence in accordance with Tennessee Code Annotated section 40-39-208, which states in pertinent part, "It is an offense for an offender to knowingly violate any provision of this part. Violations shall include, but not be limited to: (1) Failure of an offender to timely register or report[.]" Tenn. Code Ann. § 40-39-208(a)(1) (2016). Tennessee Code Annotated section 40-39-203(a)(1) provides in relevant part that, "[w]ithin forty-eight (48) hours of establishing or changing a primary or secondary residence, . . . the offender shall register or report in person, as required by this part." Tenn. Code Ann. § 40-39-203(a)(1) (2016). A "primary residence" is defined as "a place where the person abides, lodges, resides or establishes any other living accommodations in this state for five (5) consecutive days." Tenn. Code Ann. § 40-39-202(12) (2016). Tennessee Code Annotated section 40-39-202(18) defines a "secondary residence" as "a place where the person routinely abides, lodges or resides for a period of four (4) or more consecutive or nonconsecutive days in any month and that is not the person's primary residence, including any out-of-state address[.]" Tenn. Code Ann. § 40-39-202(18) (2016).

Here, Defendant was placed on the sex offender registry in 2012 based on his conviction for aggravated statutory rape. Investigator Postel explained to Defendant that he needed to disclose any secondary addresses and detailed what qualified as a secondary address; however, Defendant denied having a secondary address. Investigator Postel went through the sex offender registration form "line by line" with Defendant to make sure that he understood the requirements of the sex offender registry, including the requirement that he report within 48 hours of changing or establishing a primary or secondary address. Defendant acknowledged, by signing the sex offender registration form, that the requirements of the sex offender registry had been read to him and that he understood the requirements. Defendant's signature on the sex offender registration form

creates a presumption that Defendant had knowledge of all the rules and requirements of reporting. *See* Tenn. Code Ann. § 40-39-203(l) (2016).

After Defendant completed an updated sex offender registration form at the end of February 2016, Investigator Postel attempted to make contact with Defendant via telephone on several occasions but was only able to exchange voicemail messages with him. After her unsuccessful attempts to speak personally with Defendant, Investigator Postel began searching for Defendant on March 19, 2016. She enlisted the help of fellow Blount County officers, the Alcoa Police Department, and the U.S. Marshals Service, who searched for Defendant from March 19, 2016 to April 5, 2016, when the U.S. Marshals Service located and arrested Defendant at Ms. Harris' home. During this time, investigators made multiple visits to Defendant's primary residence and a visit to his place of employment to confirm he was not there. Investigator Postel testified that, at the time of his arrest, Defendant admitted that he had stayed at his mother's residence in Mississippi for "about seven days"—from March 25, 2016, and returned to Tennessee on April 1, 2016—and that the investigation by the U.S. Marshals Service confirmed that Defendant had been there. Additionally, Ms. Harris testified that she picked up Defendant from a bus station in Nashville approximately two to three days before his arrest and that he was at her residence at the time of his arrest. Thus, when viewed in the light most favorable to the State, the proof showed that Defendant was at his mother's residence in Mississippi for seven days in March 2016, and that Defendant failed to report this secondary residence to Investigator Postel as required by the sex offender registry. The evidence is sufficient to support Defendant's conviction for a violation of the sex offender registry.

### *Corroboration of Defendant's statement*

A criminal conviction cannot be based solely on a defendant's uncorroborated confession; therefore, the State must present corroborating evidence to establish the corpus delicti. *State v. Banks*, 271 S.W.3d 90, 140 (Tenn. 2008) (citing *State v. Smith*, 24 S.W.3d 274, 281) (Tenn. 2000)). "Corpus delicti is the body of the crime—evidence that a crime was committed at the place alleged in the indictment." *Van Zandt v. State*, 402 S.W.2d 130, 136 (Tenn. 1996). The Tennessee Supreme Court has adopted the "modified trustworthiness standard" in determining whether a confession is sufficiently corroborated. *State v. Bishop*, 431 S.W.3d 22, 58 (Tenn. 2014). The supreme court explained that under this standard:

> When a defendant challenges the admission of his extrajudicial confession on lack-of-corroboration grounds, the trial court should begin by asking whether the charged offense is one that involves a tangible injury. If the answer is yes, then the State must provide substantial independent evidence

tending to show that the defendant's statement is trustworthy, plus independent prima facie evidence that the injury actually occurred. If the answer is no, then the State must provide substantial independent evidence tending to show that the defendant's statement is trustworthy, and the evidence must link the defendant to the crime.

*Id.* at 60. "Substantial evidence" is "[e]vidence that a reasonable mind could accept as adequate to support a conclusion; evidence beyond a scintilla." *State v. Clark*, 452 S.W.3d 268, 280 (2014) (internal quotation marks omitted) (citing **Black's Law Dictionary** 640 (9th ed. 2009)).

"The corroboration requirement is a low threshold. Its purpose is twofold: to weed out false confessions to nonexistent crimes (by requiring some independent evidence that the injury occurred) and to weed out false confessions to actual crimes (by requiring some independent evidence that implicates the accused)." *Id.* (citing *Bishop*, 431 S.W.3d at 59-60). "The standard of proof required to clear this hurdle is even lower than the preponderance of the evidence standard." *Id.* (internal quotation marks omitted) (citing *Bishop*, 431 S.W.3d at 60 n.33).

"The question of whether an extrajudicial confession is adequately corroborated is a mixed question of law and fact that appellate courts will review de novo. To the extent that the corroboration challenge rests on disputed facts, appellate courts should presume that the trial court's resolution of factual disputes is correct, unless the evidence preponderates against those findings."

*Bishop*, 431 S.W.3d at 61.

In this case, the charged offense—a violation of the sex offender registry by failing to report a secondary address—does not involve a tangible injury. Accordingly, to corroborate Defendant's statement that he was at his mother's residence in Mississippi for the week leading up to April 1, 2016, the State was required to present substantial independent evidence tending to show that Defendant's statement was trustworthy and linking Defendant to the crime. Detective Carswell testified that she made three separate visits to Defendant's primary residence, one of which occurred during the time Defendant stated he was at his mother's residence in Mississippi, and she was unable to locate Defendant. Ms. Harris testified that she picked up Defendant from a bus station in Nashville a few days before his arrest on April 5, and Investigator Postel testified that the U.S. Marshals Service confirmed that Defendant had been in Mississippi. Additionally, Defendant made statements in a recorded phone call to Ms. Harris, in which he again implicated himself by admitting that he had been in Mississippi. "The corroboration

requirement is a low threshold." *Clark,* 452 S.W.3d at 280. We conclude that Defendant's extrajudicial confession was sufficiently corroborated. Defendant is not entitled to relief.

## **Conclusion**

For the aforementioned reasons, we affirm the judgment of the circuit court.


_____
ROBERT L. HOLLOWAY, JR., JUDGE